**STATE of Missouri, Respondent,**

v.

**Al AMOS, a/k/a James Edward Shelton, Appellant.**

**No. KCD26041.**

Missouri Court of Appeals,

Kansas City District.

Jan. 19, 1972.

David W. Russell, Duncan & Russell, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, C. J., and DIXON and CROSS, JJ.

SHANGLER, Chief Judge.

The defendant-appellant Al Amos was convicted by a jury for the possession of a quantity of marijuana, the plant cannabis sativa, and was sentenced to imprisonment for a term of four years. Three grounds are alleged as trial error, among them, that Sections 195.017 and 195.020, V.A.M.S., under which the appellant was convicted, arbitrarily and unreasonably classify marijuana as a dangerous and addictive drug, and in so doing, have denied appellant the equal protection of the laws and his right to due process under the Fourteenth Amendment to the United States Constitution. At oral argument, the appellant waived this constitutional assertion— whether importing the construction or only the settled application of the Federal constitution we need not now decide—thus jurisdiction of this appeal clearly rests in this court. Missouri Constitution of 1945, V.A.M.S., Article V, Section 3, as amended, August 4, 1971.

The appellant contends that the trial court erred in refusing his motion for mistrial after the prosecutor had improperly cross-examined the appellant about a prior conviction for crime, which the appellant denied, and which the prosecutor never proved. The appellant, as defendant, took the stand as a witness on his own behalf. The cross-examination by the prosecutor opened with the inquiry: "Have you ever been convicted of a felony?", to which the appellant replied, "No, sir." This relevant cross-examination ensued:

"Q. Did you ever use the name of James Edward Shelton?

"A. That's my name.

"Q. Is that your correct name, James Edward Shelton?

\* \* \* \* \* \*

"A. Yes, sir.

"Q. Did you understand when you took the stand and was (sic) sworn by this girl and your attorney asked you what your name was and you said Al Amos?

"A. Yes.

"Q. And that is not true; your name is James Edward Shelton; is that what you are saying now?

"A. Yes.

"Q. And you are not the same James Edward Shelton who was convicted of Grand Larceny on January 10th—

"MR. RUSSELL: Your Honor, he has asked him a question and he has answered it, that he has never been convicted of a crime.

"THE COURT: Your objection is overruled. This is cross-examination.

"A. I have never been convicted.

"Q. (By Mr. DeCuyper) For Grand Larceny and you got three years?

"A. I have never been convicted.

"MR. RUSSELL: I am going to object to that, your Honor, as putting facts in evidence that has (sic) not been substantiated by this defendant, and I am going to move for a mistrial. This has nothing to do with this defendant. He stated that he has never been convicted of a crime, and now he is accusing him of something he is reading off of a piece of paper.

"THE COURT: Your objection is overruled. This is cross examination. Proceed."

What followed was an inquiry by the prosecutor, who was obviously consulting some offense record, as to whether the defendant had gone by certain other names during his past seven years of residency in Los Angeles. The defendant admitted to having used the name Jessie Johnson while residing in Los Angeles, but denied that he had ever gone by the names James Edwards, William D. Shelton or James Lee Copeland in that city or anywhere else. The prosecutor concluded this phase of his cross-examination by inquiring into the defendant's physical characteristics—his weight, height, color of hair and eyes, racial strain—in a manner calculated to confirm that the unnamed and many-aliased subject of the offense record was actually the defendant. And, in fact, from the mode of questioning and the answers elicited, it was clearly inferable that, except for a discrepancy of a few months in the dates of birth and the denial by the defendant that he had a scar on the right forearm, the two persons possessed identical vital statistics, even to having been born in the same rural county.

The prosecutor resumed cross-examination by once again inquiring of the defendant if he had used the names Willie D. Shelton and James Edwards, and once again the defendant denied that he ever had. Thereupon, this colloquy took place between counsel and the court outside the hearing of the jury:

"MR. RUSSELL: May we approach the bench, your Honor?

"MR RUSSELL: Your Honor, I am going to object . . . . Mr. DeCuyper is standing right in front of the jury and is holding up a rap sheet right in front of them and is reading off alias names in front of the jury when there is no such evidence that that rap sheet would be involved in this case at all, so I would object to that use, because he has been standing there doing it, and I move for a mistrial.

"MR. DeCUYPER: In the first place, I wasn't holding it up, it was laying down on my pad.

"MR. RUSSELL: Not six inches from one of those jurors.

"MR. DeCUYPER: I will stand back.

"THE COURT: I think as far as displaying the rap sheet, the objection is well taken. The objection is sustained. The motion for a mistrial is overruled."

The prosecutor concluded his cross-examination of the defendant by inquiring, for the third time, whether the defendant had gone by any of the aliases previously mentioned and denied, and once again denied by defendant.

■ A criminal defendant who elects to take the stand on his own behalf may be contradicted and impeached as any other witness and is subject to cross-examination on prior convictions for the sole purpose of affecting his credibility. State v. Frey, Mo., 459 S.W.2d 359, 360; Sections 491.-050 and 546.260, V.A.M.S. This does not mean that a prosecutor may roam at will under the guise of impeaching a witness and by the manner of his cross-examination raise an unsupported inference of crime by a witness. For that reason, the party undertaking to impeach by a former conviction of crime must be prepared to make a proper showing of such a conviction either by the admission of the defendant or by the record. State v. Pence, Mo., 428 S.W.2d 503, 507 [4]; State v. Washington, Mo., 383 S.W.2d 518, 523 [8]. Furthermore, unless the defendant has first placed his general reputation in issue, impeachment must be confined to the legitimate object of such an inquiry, the reputation of the witness for truth and veracity. State v. Williams, 337 Mo. 884, 87 S.W.2d 175, 182 [9]; State v. Ferguson, 353 Mo. 46, 182 S.W.2d 38, 42. It may not be designed to infer the bad general reputation of the witness and thus his guilt as a defendant. State v. Scott, Mo., 459 S.W.2d 321, 324 [3].

The defendant urges that he was prejudiced before the jury, not only by the failure of the prosecutor to present evidence that defendant had been convicted of grand larceny following his denial of that offense, but also by the obvious resort by the prosecutor to an FBI offense index during the impeachment interrogation. The practice whereby a prosecutor, under the guise of impeachment, asks a criminal defendant whether he has been convicted of a crime—without record evidence upon which to base the question—has been condemned, but until recently has not served as a sole ground of reversal of the conviction. State v. Pence, Mo., 428 S.W.2d 503, 507 [4]; State v. Ware, Mo., 449 S.W.2d 624, 626 [1]. Then, in State v. Charlton, Mo., 465 S.W.2d 502, 1.c. 507, the court, although following the rule in *Pence* and *Ware,* sounded the tocsin that a prosecutor who examines a criminal defendant on prior convictions, but has no evidence to contradict the defendant's denial, courts reversal of the conviction.

■ We sustain the defendant's claim of prejudice. The full course of the impeachment cross-examination created an unmistakable, although legally unsupportable, inference that defendant had been convicted of grand larceny. The prosecutor offered no evidence to rebut the defendant's denial that he had been convicted of that offense. Rather, he undertook a persistent inquiry into other identities and aliases the defendant may have assumed, and those which defendant had denied having used were tied to him by an uncanny coincidence of personal detail obviously derived from the FBI report to which the prosecutor was making reference and which gave color or authenticity to the inference that if not as Al Amos, then the defendant had committed grand larceny as James Edward Shelton, William D. Shelton, Jessie Johnson, James Edwards or James Lee Copeland.

■ We do not question the good faith of the able and conscientious prosecutor in pressing his inquiry, under the circumstances, concerning other names under which the defendant had gone. It was legitimate impeachment for the prosecutor to show that defendant Al Amos, by some other name, had been convicted of grand larceny. In the absence of special circumstances, it is improper to question a witness about the claimed use of an assumed name. That is because it is an impeachment which tends to degrade the witness and is normally understood as evidence of a bad general reputation. People v. Guiterrez, 152 Cal.App.2d 115, 312 P.2d 291, 294 [3–5]; People v. Swayze, 220 Cal. App.2d 476, 34 Cal.Rptr. 5, 16 [18]. But where, as here, there is an issue or dispute as to the true name of the witness, such questioning is proper. And since identity of name raises the presumption of identity of person (Myles v. St. Louis Public Service Co., Mo.App., 52 S.W.2d 595, 598 [6]; State v. Johnson, Mo., 293 S.W.2d 907, 911 [8–12]), the defendant's acknowledgment that he had gone by the names James Edward Shelton and Jessie Johnson rendered admissible a record of conviction under either of those names as tending to prove the offense was committed by the defendant. The prejudice arose when evidence of identity of person was shown but evidence of conviction under the assumed name was not, for although the prior conviction which had been the focus of the protracted impeachment interrogation had not been proved, the impression or inference of prior crime was implanted in the jury's consciousness.

One further aspect of the impeachment cross-examination contributed to the cumulative prejudice we find. We cannot know whether the jury were aware that the report to which the prosecutor recurrently resorted for his impeachment information was an FBI offense sheet, but we must assume from the frequent and open display of that document that its official appearance was not entirely lost to them. Thus, although the report was never offered in evidence to prove a prior conviction or the

identities the defendant denied he had assumed, and · indeed would have been incompetent for those purposes, the jury could very well have been induced by the cachet of its official appearance to treat the cross-examination inquiry itself as authentic evidence.

For these reasons, the judgment is reversed and remanded.

All concur.