STATE of Missouri,
Plaintiff–Respondent,

v.

Becca Jean HUGHES,
Defendant–Appellant.

No. 50185.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 23, 1988.

Application to Transfer Denied
May 17, 1988.

Robert Brooks Ramsey, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., for plaintiff-respondent.

STEPHAN, Presiding Judge.

Defendant was convicted of capital murder and sentenced to life imprisonment without the possibility of probation or parole for a period of fifty years. She appeals the conviction; we affirm.

The sufficiency of the evidence has been questioned. We, therefore, present the facts in a light most favorable to the verdict.

Defendant and the victim, Donald Hughes, were married to each other. Defendant managed a hog farm and the victim worked as an "over-the-road" truck driver. Defendant employed Melvin Saunders to assist her in running the hog farm.

Defendant controlled the family finances. At the time of the murder, defendant was the beneficiary of approximately $280,000.00 in life insurance on the victim. The policies were obtained through five different insurance companies. On May 28, 1983, the victim gave defendant a handwritten will, which left all his property to her, as a birthday gift.

On January 19, 1984, while the victim was working out-of-town, defendant called her friend Karen Ruble. She wanted Ruble's address so that Social Security would send defendant's daughter's checks there. Defendant talked to Ruble two more times during the day. She told Ruble that she was planning to leave her husband and move to another state. Defendant never mentioned any "good news" regarding her health to Ruble.

The victim called defendant at approximately 6:00 to tell her he would be home in a few hours. Defendant told her hired hand, Saunders, that she wanted him to drive her to the truck port to meet her husband so that she could tell him the good news that she had been cured of cancer. On the way to the truck port defendant complained to Saunders that her husband had been "running around" with his ex-wife. Saunders dropped defendant off at the gate to the Ryder Truck Port in Fenton. She gave Saunders some money and told him to go to the Pizza Hut in DeSoto. Defendant wanted Saunders to follow them home because "they were going to have an accident, and Don wasn't going to be coming home." Saunders went to the A & W Drive–In on Highway 21 in DeSoto just prior to midnight and ordered food from his car. Saunders never looked at the waitress who brought his food because he was watching the road at all times, but the waitress was able to identify him.

After Saunders saw the victim's pick-up truck pass, he waited approximately ten minutes and followed. He eventually saw defendant walking along Highway 21 and stopped to pick her up. A witness from the Union Pacific Railroad in DeSoto was driving home from work at approximately 12:30 a.m. He saw a woman walking beside the road and stopped to offer her a ride. She told him to "get out of here". A van then drove up and the woman got in. The witness later identified defendant as the woman he saw that night.

Defendant and Saunders returned home. Defendant told Saunders that he should tell the police they spent the night at the farrowing house waiting for one of the hogs to give birth. Saunders left between 1:45 and 2:10 a.m., at which time defendant telephoned the Ryder truck plant telling them she was concerned because her husband had not returned home.

A Chrysler worker returning home from work discovered the victim's truck on a side road near Highway 21 and informed

the police. Police officials reported to the scene and found the victim. The autopsy established that he had been shot five times: once in the back of the head, twice in the back, once through the arm and into the chest, and once in the cheekbone. Death was determined to have been caused by either the head wound or the chest wound.

The ignition key was still in place and there was a shaving kit and a carton of cigarettes on the seat next to the victim. The police were unable to locate a gun or shell casings, but they did find a set of small footprints in the snow heading south on Highway 21.

The next day, January 20, 1984, after having been informed of the victim's death, defendant and Karen Ruble went to a bank to get the victim's handwritten will notarized. This request was refused. They also made some other inquiries regarding property and funeral arrangements. A few days later defendant began to make claims on the insurance policies.

Defendant spoke with the police on January 20, 1984. She told them that on the evening of the 19th she and Saunders had been at the farm all night, that the victim carried a .22 Colt pistol in his truck, that the police should investigate Paul Coleman and that she wanted the body released immediately. None of the police who were present at the meeting noticed any bruises or signs of a physical fight.

On January 21, 1984, Saunders saw the defendant holding a .22 caliber revolver with six empty shell casings. Defendant asked him to help her take the gun apart and, wearing gloves, put the pieces, which had been coated with cooking oil, in a plastic bag. She stated she was going to discard the pieces along the highway.

Defendant was arrested for her husband's murder on January 25, 1984. Eventually she made a taped confession admitting she shot the victim in self-defense. She was found guilty at trial.

Defendant's first point is that she was denied a fair trial by virtue of juror misconduct and improper procedure in juror orientation.

Defendant asserts that there was juror misconduct because a juror failed to answer certain questions. The rules to be considered in our determination of whether there has been juror misconduct are well settled. A prospective juror may not fail to answer questions on voir dire. It is the duty of a juror to answer all questions fully, fairly and truthfully so that the attorneys' challenges can be meaningful. *Beggs v. Universal C.I.T. Credit Corporation*, 387 S.W.2d 499, 503 (Mo. banc 1965). Not every failure of a prospective juror to answer a question is sufficient to entitle defendant to a new trial. *State v. McGinnis*, 622 S.W.2d 416, 421 (Mo.App.1981). Generally, this issue is left to the discretion of the trial judge and will only be overturned if the record indicates there has been an abuse of discretion. *Beggs*, 387 S.W.2d at 503.

The defense alleged that two questions asked during voir dire were not answered by Larry Arnold, the foreman, when they should have been. The questions were "whether or not a juror or any member of his family had been a victim of assault" and "whether any juror had prior dealings with the Prosecuting Attorney's office?"

At the hearing on the Motion for New Trial, Mr. Arnold told the court that during the original juror orientation he told Judge Anderson (who was not the trial judge) that his son had been the victim of an assault in a pending case in County Circuit Court. The judge told him that it would probably not affect his ability to serve as a juror. Mr. Arnold also testified that he did not respond to the court's questioning of whether he had been the victim of an assault because he had not been a victim. He testified that he had been in contact with the prosecuting attorney's office to check the status of his son's case. Finally, he told the court that the fact he had been in contact with the prosecutor's office did not affect his decision in the underlying trial and that he had not attempted to mislead the court.

Thereafter, the trial court reviewed the transcript and made several findings of

fact regarding the "nondisclosure." It was determined that defense counsel had only asked if anyone *on the panel* had been a victim of assault. Any other questioning regarding assaults was done individually, outside the presence of the rest of the jury. There were no specific questions regarding relationships or contacts with the prosecuting attorney's office. The topic itself was approached very broadly. We cannot fault any juror for misunderstanding what was meant by the questions.

■ After carefully evaluating Mr. Arnold's demeanor, considering his explanation and reviewing the transcript, the trial court found no intentional misconduct. The trial judge was in the best position to make these observations. We hold, therefore, that based on the trial judge's findings of fact there was no prejudice to the defendant and the trial judge was not guilty of abuse of discretion in overruling defendant's Motion for New Trial on this point.

■ Defendant also complains that the juror orientation was error. We find no merit in this contention. Judge Anderson was conducting a general orientation of jurors, not selecting panel members. Mr. Arnold testified that the judge told him the assault would probably not affect his chances of getting on a jury. The judge did not tell him he was excused from answering the questions asked on voir dire. We find nothing improper in conducting a general orientation after a jury panel has been summoned. Point I is, therefore, denied.

■ In her second point, defendant raises three instances of prosecutor misconduct. They are: (1) The prosecutor made improper final arguments regarding crucial issues of fact which he knew to be false; (2) The prosecutor failed to pursue exculpatory evidence which would have raised doubt as to defendant's guilt; and, (3) The prosecutor engaged in a pattern of continual repetitive questions during cross-examination of defendant which were designed to harass and intimidate her.

As written the point preserves nothing for review because it fails to state wherein the trial court erred. *Tierney v. Berg*, 679 S.W.2d 919, 921 (Mo.App.1984). Rule 30.-06(d) states that "setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Defendant has not set forth any action or ruling of the trial court. The point is merely a complaint about the prosecutor's behavior.

Although the point was not preserved, we have reviewed for plain error. After examining the relevant portions of the record we find no evidence of manifest injustice. Point II is denied.

Defendant's third point states that the trial court erred in sustaining the state's fifth and sixth motions in limine which precluded defendant from admitting an affidavit of Melvin Saunders into evidence. At trial Saunders testified that defendant wanted Saunders to follow the victim and her home from the truck plant because, "They were going to have an accident, and Don wasn't going to be coming home."

■ The State's fifth motion in limine objected to the seventh and eighth paragraphs of an affidavit dated October 1, 1984, because they consisted solely of speculative, irrelevant and conclusionary statements. Although the State's sixth motion in limine is mentioned in the point relied on, it is not discussed in the argument portion of the brief. Therefore, the objection has not been properly preserved for appeal and we will not consider it here. *State v. Williams*, 674 S.W.2d 46, 48 (Mo.App. 1984).

The seventh and eighth paragraphs of Melvin Saunders' affidavit read:

7. I do not believe that Becca Hughes went to St. Louis with the idea of killing Don. When she told me to follow Don's truck and that an accident might occur, I believed then, and I believe now, that she meant Don night (sic) have a car wreck or attack Becca as he had on previous occasions when he found out that I was driving one of his vehicles.

I also thought Don might not be coming back because he often came into his

truck terminal in St. Louis County and went on another run without coming home to Potosi.

Also I have seen Don on several occasions leave Becca standing in town and drive away from her when he was angry. I think Becca was afraid he might do that to her that night.

Nothing Becca said that made me believe that Don would be shoot (sic) later in the evening.

8. The police have twisted my words to make it appear that Becca planned to shoot Don.

■ Extra judicial statements of a witness are not admissible because they constitute a form of hearsay. *State v. Nimrod*, 484 S.W.2d 475, 479 (Mo.1972). This rule has an important exception in that prior inconsistent statements may be admitted to impeach the witness, allowing the trier of fact to be able to judge the credibility of the witness. *Id.* Since this is a past recollection recorded, a foundation must first be laid by asking the witness if he 1) made the statement and 2) getting either a denial or an answer that he does not remember it. *State v. Vaughn*, 501 S.W.2d 839, 842 (Mo. banc 1973).

■ Saunders admitted making the statement that defendant said that the victim "might" have an accident rather than that he "would" have an accident. A proper foundation was, therefore, not laid for having the document admitted into evidence as an inconsistent statement. The trial court did not err in refusing to allow the document to be admitted. Point III is denied.

The next contention is that defendant was prejudiced when the trial court sustained the State's second motion in limine. Defendant maintains that, by preventing evidence or references to her allegation that she was beaten in the Jefferson County jail, she was prejudiced because she could not present evidence on her theory of defense and she was prevented from cross-examining deputies as to bias, motive, interest and hostility against her.

The only statement resembling an offer of proof made by the defense was:

Well, your Honor, if the State—or if the Defendant was not beaten in the jail as stated by the prosecuting attorney, then I can't see how the State would be in a box if they would be able to counter such an allegation.

Second of all, if the Defendant was in fact beaten, as she says she was, from a member of the Sheriff's Department in the county. And if this particular deputy happened to be one of the deputies who questioned her after the original arrest and just prior to her making a statement, I think that would be highly relevant to motives and bias of the sheriff's deputy who took the statement and of all the deputies who may be testifying against her.

■ An offer of proof must state specific facts which establish the admissibility of the evidence. *State v. Dixon*, 655 S.W. 2d 547, 557 (Mo.App.1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). The offer may be narrative as long as it does not consist merely of counsel's conclusions. *Id.* Without the requisite specificity there is always a risk that the offer will be insufficient. *Id.*

Defendant claims she was prejudiced because she was unable to present evidence on her theory of defense. From the offer of proof we think the theory of defense was to show the bias and hostility of the sheriff's deputies. We will, therefore, consider the contention in that light.

■ It is always relevant to show the interest or bias of a witness on cross-examination. *State v. White*, 650 S.W.2d 341, 342 (Mo.App.1983). The scope of cross-examination is, however, within the broad discretion of the trial court and we will only overturn its decision if that discretion has been abused. *State v. Conley*, 699 S.W.2d 50, 51 (Mo.App.1985). Upon review of the record we find no abuse of discretion.

■ Defendant's offer of proof failed to show that any witness at trial would have knowledge of the alleged threats and beating. The deputy who interrogated her

denied she had been threatened. We also find that defendant was not prejudiced because of the ruling. Defendant testified that the deputies threatened her and her children and that one of the deputies struck her, knocking her into a chair. Moreover, during closing argument defense counsel stated that a detective had threatened defendant. It was, therefore, before the jury and they could weigh the allegation with the rest of the evidence. Cf. *State v. Johnson,* 700 S.W.2d 815, 818 (Mo. banc 1985), *cert. denied,* 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986). Accordingly, we find no prejudice or abuse of discretion.

Defendant's fifth point is that there was insufficient evidence to support the verdict. The trial court, therefore, erred in not granting her a new trial. Specifically defendant maintains, there was insufficient evidence regarding the element of deliberation, and testimony regarding the cause of death was insufficient to find defendant guilty of capital murder beyond a reasonable doubt.

When we determine sufficiency of the evidence we accept as true all evidence, whether circumstantial or direct, which supports the verdict. *State v. Williams,* 652 S.W.2d 102, 111 (Mo. banc 1983). Our review of the evidence in this light leads us to the conclusion that there is sufficient evidence to support the conviction.

█ A deliberate act is performed with a cool and deliberate state of mind. *State v. McDonald,* 661 S.W.2d 497, 501 (Mo. banc 1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984). Deliberation can be inferred from the evidence and circumstances surrounding the act. *State v. Bolder,* 635 S.W.2d 673, 680 (Mo. banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983).

█ The state presented ample evidence of defendant's deliberation. The testimony of Melvin Saunders indicated a plan. He testified that defendant suggested going to the truck port to meet the victim; she indicated there would be an accident and Don would not be coming home; she also made sure that Saunders followed so that she could get a ride home.

While we agree the evidence is in some respects circumstantial, it is still probative and sufficient to uphold the conviction. *Williams,* 652 S.W.2d at 111.

█ Defendant also asserts that the cause of death testified to by the State's medical examiner was insufficient to establish her guilt. This is based on the fact that he did not remove one of the five bullets from the victim's body. Defendant contends that the unremoved bullet was twice as large as the other bullets. This raised a reasonable doubt as to whether all the bullets came from the same gun. Based on this, defendant argues that she cannot be held criminally responsible for the homicide unless her actions can be said to be the cause of the victim's death. *State v. Cheatham,* 340 S.W.2d 16, 19 (Mo. 1960).

While we agree with the general statement, we do not think it applies here. The medical examiner explained that the victim was shot five times. Either of two wounds could have caused the death and all occurred within the same period of time. Defendant admitted to shooting the victim and inflicting a number of wounds. The four bullets that were recovered were fired from the same gun. The defendant's contention that the unrecovered bullet was larger than the other bullets was based on the medical examiner's testimony that the hole in the skull made upon entry was approximately twice the size of entry wounds of the other bullets. This fact was explained, however, by the medical examiner's testimony that the penetration of the skull bone would cause a larger wound than the penetration of soft tissue. He also explained that he did not remove the bullet because it had lodged in the victim's jaw bone, and its removal would have caused serious disfigurement of the victim's face. His examination of X-ray pictures showed the bullet to be approximately the same size as the others, albeit "more flattened out" by reason of its passing through the skull bone.

Defendant's arguments relating to the sufficiency of the evidence are without merit, and the point is denied.

Defendant's last point is that she was denied due process because the court reporter failed to prepare a full and accurate transcript of the trial. Defendant fails to take note of Supreme Court Rule 30.-04(g) which states in part:

If there is any dispute concerning the correctness of any legal file or transcript, or if the parties fail to agree within a reasonable time as to its correctness, *the legal file or transcript shall be settled and approved by the trial court.* (emphasis supplied).

The trial court issued two orders verifying the correctness of the transcript. Since the trial court has approved the transcript before us, we accept it as written. *State v. Davis*, 573 S.W.2d 114, 116 (Mo.App.1978).

The judgment is affirmed.

DOWD and PUDLOWSKI, JJ., concur.