STATE of Missouri,
Plaintiff–Respondent,

v.

Jeffrey Lynn SHACKLEY,
Defendant–Appellant.

No. 52963.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 15, 1988.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
April 15, 1988.

Application to Transfer Denied
June 14, 1988.

Dorothy Mae Hirzy, Public Defender, David C. Hemingway, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Jeffrey Lynn Shackley, appeals from his convictions, after a jury trial, of assault in the first degree, a class B felony, and armed criminal action. He was sentenced to consecutive sentences of ten years' and three years' imprisonment respectively. We affirm.

Defendant claims the trial court erred: (1) by refusing to set aside the verdict because of juror misconduct; (2) by denying defendant's motion for judgment of acquittal; and (3) by admitting defendant's pretrial statements into evidence.

The evidence at trial disclosed that on March 9, 1986, Fred Bender offered defendant the sum of $3,000 if he would "hurt" John Lord. Defendant agreed and told Bender he would throw hydrochloric acid on Lord. In 1983 Lord, an assistant prosecuting attorney for St. Louis County, prosecuted Bender for odometer fraud.

On March 11, 1986, defendant knocked on the front door of Lord's residence. When Lord answered the door defendant told him he was with the National Carrier Service and had a package for John Lord. Lord opened his front door and defendant threw hydrochloric acid in his face. The stream of acid hit Lord on the left portion of his forehead and splattered into his eyes and onto his ears and neck. Defendant fled and Lord chased him to his car. As defendant pulled away, Lord grabbed the license plate off defendant's car.

Thereafter, Lord returned to his house, dialed 911 to summon assistance, and began to flush his eyes out with water. Paramedics arrived, continued to flush out his eyes, and transported him to St. Joseph's Hospital. At St. Joseph's Hospital his eyes were flushed for approximately three and one-half hours before he was transferred to Barnes Hospital where his treatment continued. He was released from Barnes Hospital on the following day, March 12, 1986.

For several months after the incident a doctor treated Lord for blurred and double vision. At the time of trial, Lord's vision had not returned to the level it was before the incident.

Defendant turned himself into the police on March 24, 1986. After being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), defendant made oral and written statements detailing his agreement with Bender to assault Lord in exchange for $3,000, his decision to use hydrochloric acid, and the subsequent assault.

At trial, defendant testified on his own behalf and admitted throwing hydrochloric acid in Lord's face in exchange for Bender's promise to pay him $3,000. However, defendant denied the intent to seriously injure Lord. Defendant's expert testified that hydrochloric acid could cause serious injury to the human eye.

Edwin Dwight Bouchard served as a juror. His son was an assistant prosecuting attorney in Jefferson County. In a pretrial questionnaire jurors were asked if they were related to anyone in "law enforcement." Bouchard answered "no." During voir dire the State asked the jury panel whether any of them were related to anyone in law enforcement. One person responded that his son was a police officer. The State then questioned the panel about their relations, if any, with police officers. As a part of one of his questions relating to police officers the prosecutor said, "Mr. Lord was a prosecutor and therefore I guess would be considered in law enforcement." Defense counsel also questioned members of the panel about their relationship, if any, with law enforcement officials in general and police officers in particular.

Bouchard did not mention that his son was a part-time prosecuting attorney. The panel members were never specifically asked about their relationships or contacts with any prosecuting attorney. Following defendant's conviction, Bouchard, at the suggestion of his son, wrote a letter to the trial judge indicating that he filled out a jury questionnaire before the trial and answered "no" to the question of whether or not he was related to someone in law en-

forcement. He explained that he answered "no" because he did not feel his son was in law enforcement. Bouchard stated that the fact that his son was a part-time prosecuting attorney had not affected his ability to afford defendant a fair and impartial trial.

Thereafter, defendant filed a timely addendum to his motion for new trial stating that had counsel known the juror's son was a part-time prosecuting attorney, she would have moved to strike him for cause and, if that was unsuccessful, she would have used a peremptory strike to remove him. The trial judge denied defendant's motion for a new trial. He reviewed the questions asked during voir dire concerning law enforcement and found, inter alia, that they were insufficient to direct a juror's attention to the fact a part-time prosecutor could be connected with law enforcement.

Defendant first claims that the trial court erred by refusing to set aside the verdict based upon Bouchard's failure to mention on the juror questionnaire or during voir dire that he was related to a law enforcement official.

■ Every citizen has a constitutional right to a fair and impartial trial. *State v. Endres*, 698 S.W.2d 591, 595 (Mo.App. 1985). Accordingly, it is the duty of prospective jurors to answer all questions during voir dire fairly and truthfully so that the attorneys' challenges can be intelligently exercised. *State v. Hughes*, 748 S.W.2d 733, 736 (E.D.Mo.App.1988). Section 494.-050, RSMo (1986) provides: "No exception to a juror on account of his citizenship, nonresidence, state or age or other legal disability shall be allowed after the jury is sworn." An exception to this is recognized where (1) the ground for disqualification was actually explored on voir dire, (2) complaining counsel had no knowledge of juror's deception, and (3) the juror intentionally conceals the truth. *Endres* at 595. Only after this test is met does an inference of bias and prejudice arise requiring a new trial. *Id.*

■ Here, the ground for disqualification was not sufficiently explored during voir dire. As the trial judge noted in his ruling, the question was never asked whether or not any member of the panel was related to a prosecuting attorney or even to an attorney. The panel was never told what was included in the term "law enforcement officials." The focus of the questions was on relationships with police officers. We cannot fault Bouchard for not responding to a question that was never asked. The trial judge did not abuse his discretion by finding that defendant failed to satisfy the first part of the three part test. Defendant's first point is denied.

Next, defendant challenges the sufficiency of the evidence to support a class B assault, first degree, conviction. He argues that there was insufficient evidence to support a finding that he attempted to cause Lord serious physical injury.

■ Defendant was charged with assault, first degree, a class A felony, and armed criminal action. The jury found the defendant not guilty of the class A assault and guilty of the class B assault. Assault in the first degree is a class B felony "unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony." Section 565.050.2, RSMo (1986). The defense was directed at negating the element of the actual infliction of serious physical injury and, in general, minimizing rather than denying defendant's culpability. Considering the evidence in this case, the gravity of the charges, and the sentences recommended by the jury, the defense was successful.

On the other hand, defendant's evidence was tantamount to an admission of guilt to the charge of assault, first degree, class B felony. Under defendant's evidence, Bender hired him to hurt Lord in exchange for $3,000. Defendant testified that he knocked on Lord's door and, when he answered, defendant threw hydrochloric acid in his face. He also testified he collected $1,000 for his efforts.

Defendant called Dr. Gans, a doctor of ophthalmology and professor at Washington University's Medical School, to testify as an expert witness. Although the testimony of Dr. Gans negated the class A

element of serious physical injury, it clearly established the class B element of an attempt to cause serious physical injury. On direct examination Dr. Gans testified:

Q. Okay. Now, Doctor, in a sense, any injury to the eye has to be taken seriously; is that correct?

A. That's correct.

Q. Okay. And this had the potential for being a serious injury to the eye, would that be fair to say?

A. Yes. Absolutely.

On cross examination, Dr. Gans testified that "hydrochloric acid in and of itself can cause a serious injury and even the loss of an eye."

Defendant, through his testimony and the testimony of his medical witness, proved that he attempted to cause serious physical injury to Lord, thus, satisfying the elements of assault first degree, class B. Defendant's second point is denied.

■ Finally, defendant argues that the trial court erred by admitting his oral and written statements into evidence. He argues that the statements, obtained during custodial interrogation by the police, were involuntary and should have been suppressed.

In light of defendant's judicial admissions and the evidence he presented, any claim of prejudice arising from the admission of his confession is illusory. *See, e.g.,* *State v. Hill,* 714 S.W.2d 687 (Mo.App. 1986). In addition, our review of the record discloses substantial evidence to support the trial court's finding that defendant's confession was voluntary. Defendant's final point is denied.

The judgment of the trial court is affirmed.

SIMON, P.J. and GRIMM, J., concur.