**STATE of Missouri, Respondent,**

**v.**

**Larry E. WEBER, Appellant.**

**No. 58426.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 23, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 21, 1991.

Brad B. Baker, Columbia, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

Defendant was convicted by a jury of burglary, first degree, § 569.010 RSMo 1986,[1] and was sentenced to five years imprisonment. He appeals. We affirm.

A person commits the crime of first degree burglary if he unlawfully "enters ... a building or inhabitable structure for the purpose of committing a crime", while a non-participant in the crime is present in the structure. § 569.160.1(3); *e.g. State v. Hicks*, 716 S.W.2d 387, 391 (Mo.App.1986). Defendant was charged and convicted of unlawfully entering the female victim's home "for the purpose of committing rape." Defendant contends the state failed to make a submissible case.

■ To resolve the issue of submissibility, we accept as true all evidence and permissible inferences which support the verdict, reject all contrary evidence and inferences and determine whether the evidence so viewed is sufficient for reasonable persons to find the defendant guilty beyond a reasonable doubt. *State v. Sinner*, 779

S.W.2d 690, 695 (Mo.App.1989). If the state's case was in part based upon circumstantial evidence, that evidence must be consistent with guilt and inconsistent with any reasonable theory of innocence. *Id.*

An essential element of the burglary offense here was defendant's intent to commit rape when he entered the victim's home. As in most cases, the state proved defendant's intent by circumstantial evidence. He contends this circumstantial evidence was insufficient to make a submissible case on intent. We disagree.

One night in April, 1989, the victim and her daughter were at home watching television. About 10:00 p.m., defendant, who had previously dated the victim, phoned her and asked to come over to see her. She said no and hung up. The victim went to bed about 12:30 a.m. About 2:30 a.m., she awoke to the sound of someone banging on her back door. Realizing the door was being smashed or kicked-in, the victim grabbed a .22 caliber pistol she kept on her water bed. Defendant kicked in the back door, and, when he entered the victim's bedroom, the victim shot him in the chest.

Defendant shoved the victim on to her water bed and pinned her to it by lying on top of her. The victim struggled but was unable to push defendant off her. She tried to convince him that she should phone for help for him, but he refused. The victim screamed for her daughter, who then came into the victim's bedroom, but defendant ordered the daughter back into her own bedroom.

Subsequently, defendant twice accompanied the victim to her daughter's bedroom so that the victim could try to calm her daughter. Defendant "was constantly yanking and jerking [the victim] around ... [she] never really had [her] bearings or [her] balance. He was constantly manhandling [her]." Each time they returned to the victim's water bed, he would lie on top of her. She hoped he "would pass out or go to sleep." He did neither. He did allow her to go to her daughter's bedroom again. This time he did not accompany her, but watched her all the time.

**1.** All statutory references are to RSMo 1986, unless otherwise stated.

When she returned, he said, "Well, it's time that I get what I came for." Then, he "shoved" the victim on to the bed, undid his jeans and exposed his penis. She "fought ... hit ... struggled ... and it didn't seem to phase him." He then had intercourse with her without her consent. Subsequently, she was able to phone for the police.

The victim admitted she had dated defendant and had engaged in sexual relations with him prior to this incident. With this background, defendant contends that the only probative evidence of defendant's intent was his statement, immediately before intercourse, that "it's time that I get what I came for." To defendant, this evidence, and the scenario that took place before the statement, "equally supports two inconsistent inferences": (1) defendant entered the victim's home to commit rape, or (2) he entered the home to have consensual sexual intercourse.

Defendant's second inference is not reasonable. We apply the circumstantial evidence rule realistically. The circumstances need not conclusively show guilt nor demonstrate the impossibility of innocence. *E.g. State v. Morgan*, 592 S.W.2d 796, 805 (Mo. banc 1980). Without detailing all the facts again, we focus on one: defendant kicked in the victim's door. Defendant's kicking in a door to reach the victim does not reasonably indicate a desire to have consensual sexual intercourse; the only reasonable inference was an intent to have sexual intercourse at defendant's command.

Defendant next contends the trial court erred in allowing the prosecutor to ask defendant, on cross-examination, if he had ever been convicted of either burglary or assaulting a police officer. The prosecutor, defendant contends, lacked a good faith basis for this inquiry and, thus, the jury was improperly allowed to consider defendant's suggested criminal history as evidence of the crime now charged. We disagree.

During direct examination, the following exchange between defendant and his counsel took place:

Q: Now, you've had some brushes with the law here and there before, haven't you?

A: Brushes?

Q: I mean ... well, you've been arrested on a few things before; is that correct?

A: Minor. Minor.

Then, on cross-examination, the following exchange between defendant and the prosecutor took place:

Q: (By prosecuting attorney): And, [you] kind of glossed over this, why don't you tell the jury exactly what some of these brushes with the law is you've had?

.    .    .    .    .

Q: What are some of your convictions?

A: (No response).

Q: What are all of your convictions?

Defense counsel: Well, your Honor, I'm going to object to that, kind of open ended, fishing expedition. If he wants to ask him specifically something for purposes of impeachment he can do so.

Prosecuting attorney: Your Honor, they glossed over the brushes with the law. I think the jury is entitled to hear every conviction he's had.

The Court: You may ask him about specific convictions he may have had, if any.

Q: You were convicted of driving with an excess of blood alcohol content in Crawford County in 1984; is that correct?

A: B.A.C.?

Q: B.A.C., yes. Is that correct?

A: Yes.

Q: You ever been convicted of burglary before?

Defense counsel: Your Honor, I'm going to again repeat my objection. If he's got something specific he can use to impeach him, he needs to ask it that way. I object to this fishing expedition he's trying to go on.

The Court: Overruled. He's entitled to ask him if he has any convictions.

Q: Please answer the question.

A: Not that I know of.

Q: Correct me if I'm wrong, were you convicted of assaulting a police officer?

Defense counsel: Your Honor, I'm going to object again. He needs to give him some date in time, some reference point. You know, what he thinks might be some kind of resisting or drunken disorderly may turn out on the books to be something else. We need some kind of reference point. Going to use this as impeachment—

The Court: Overruled. He can ask him that specific question.

[Defendant]: Would you mind repeating it, please?

Q: Isn't it true you were convicted of assaulting a police officer?

A: I don't quite remember, if I—.

The prosecutor then switched to another subject.

Defendant raised this "lack of good faith" argument for the first time in his motion for a new trial. The record does not show whether defendant supported that assertion of error in that motion with any evidence.

■ On appeal, defendant attempts to support this argument by an affidavit of his trial counsel in which his counsel states the prosecutor, at trial, possessed a printout of defendant's criminal record showing "no previous convictions." (Appendix A) We are, however, precluded from considering an affidavit which was not part of the record before the trial court. *State v. Rowling*, 687 S.W.2d 246, 248 (Mo.App. 1985); *State v. Atkins*, 549 S.W.2d 927, 930–931 (Mo.App.1977). This preclusion is particularly meaningful here. The affidavit is an attack by one counsel against the integrity of opposing counsel without any supporting documentary evidence.

■ Moreover, the record before the trial court does not show the prosecutor lacked good faith in this cross-examination. A defendant may be cross-examined about his prior convictions for the purpose of impeaching his credibility. § 491.050;

*State v. Giffin*, 640 S.W.2d 128, 132 (Mo. 1982); *State v. Lloyd*, 750 S.W.2d 589, 593 (Mo.App.1988). And, proof of the prior convictions "may be either by the record or by [the defendant's] own cross-examination, ..., and the party cross-examining shall not be concluded by his answer." § 491.050; *State v. Shisler*, 752 S.W.2d 447, 451 (Mo.App.1988).

Here, defendant himself "opened the door" for cross-examination about prior convictions when, on direct, he testified he had prior "brushes with the law." *See*, e.g. *State v. Elbert*, 471 S.W.2d 170, 172 (Mo. 1971). When given the chance on cross-examination to deny a conviction for burglary or assaulting a police officer, defendant did not do so; rather, he testified he did not know of any conviction of burglary and did not remember if he had been convicted of assaulting a police officer.

To support his argument, defendant relies on *State v. Amos*, 490 S.W.2d 328 (Mo.App.1972). His reliance is misplaced.

In *Amos*, after the defendant expressly and specifically denied he had any prior felony convictions, the prosecutor continued to inquire about possible prior convictions, with the defendant responding each time: "I have never been convicted." *Id.* at 329. Then, the prosecutor, "obviously consulting some offense record", asked the defendant "whether [he] had gone by certain other names during the past seven years." *Id.* at 330.

Noting the prosecutor failed to rebut the defendant's denial of prior convictions, the *Amos* court inferred prejudice from the prosecutor's continued questioning of the defendant about prior convictions after his continual denial along with the court's inference, "from the frequent and open display of [an FBI offense sheet,] that its official appearance was not entirely lost to [the jury]." *Id.* at 331.

Here, after defendant testified he had prior "brushes with the law", he did not specifically deny a prior conviction for burglary or assaulting a police officer; rather, he equivocated. Moreover, the prosecutor did not persist in questioning defendant about his equivocations, and there is no

**302**

indication in the record before us that the prosecutor openly displayed a "rap sheet."

■■■ This is not to say we condone the practice of a prosecutor questioning a defendant about prior convictions without a good faith belief the defendant was so convicted. Our courts have repeatedly condemned such a practice. *E.g. State v. Charlton*, 465 S.W.2d 502, 503 (Mo.1971); *State v. Ware*, 449 S.W.2d 624, 626 (Mo. 1970). But, we do not infer bad faith merely from a prosecutor's failure to produce record evidence of a defendant's convictions after his denial of such convictions. *E.g. State v. McBride*, 231 S.W. 592, 594 (Mo.1921); *State v. Brock*, 778 S.W.2d 13, 15 (Mo.App.1989); *State v. Huff*, 537 S.W.2d 836, 837 (Mo.App.1976). In short, a prosecutor does not have an affirmative duty to lay a documentary foundation prior to questioning a defendant about prior convictions, nor does he have the affirmative duty to establish the bona fides of such questioning after a defendant's denial. Either duty, however, may be triggered by defense counsel making an appropriate record before the trial court.

Defendant next contends the trial court improperly took judicial notice of a sheriff's return of service filed in another case. We disagree.

At trial, the victim testified she and defendant had been living together but, in August 1988, she moved out, telling him she no longer wanted to see him. Defendant, however, persisted in attempts to see her and threatened her. The victim said she obtained an ex parte court order of protection against defendant in February or March 1989.

■■ On direct and cross-examination, defendant denied he received notice of the ex parte order of protection. During the state's rebuttal, at the state's request and over the objection of defendant, the court took judicial notice of the sheriff's return in the protective order file "for the purpose of proving the service of the full order of protection on the defendant." [2]

Defendant contends that our courts will not take judicial notice in one action of "records and facts" established in another action, unless required to do so by "expediency and justice", or unless the other action is "between the same parties on the same basic facts involving the same general claims for relief." Defendant then demonstrates to his satisfaction that none of these prerequisites to judicial notice were met in the present case. Therefore, defendant reasons, proof of the service of the protection order on him was prejudicial hearsay. This argument is misdirected and, thus, misses the mark.

We need not address the correctness of defendant's perception of judicial notice of "records and facts" established in other court files; and, in turn, we need not address his broad based contention based upon that perception. Stripped to its essentials, defendant's contention is an attack on the admissibility of the sheriff's return to prove service on defendant without the presence of the sheriff either as the sponsoring witness for the return or as the person who personally made the service. This contention is contrary to common law.

At common law, as an exception to the hearsay rule, a record of facts was admissible to prove the facts so recorded, if the record was kept or prepared under a public duty. 5 Wigmore, *Evidence* §§ 1630–1632 (Chadbourn rev.1974). This exception is often referred to as the "officials records" or "public documents" exception. *Id.* We, in Missouri, have long recognized this exception. *See, e.g., Snider v. Wimberly*, 357 Mo. 491, 209 S.W.2d 239, 241 (1948); *Wheeler v. Fidelity & Casualty Co.*, 298 Mo. 619, 251 S.W. 924, 931 (banc 1923). Normally, in Missouri, the public duty requiring the keeping of the record is imposed by statute, ordinance, rule or regulation. *Snider*, 209 S.W.2d at 241. Thus, for example, the reports of medical examiners required by an ordinance to be made to the Board of Trustees of a municipal retirement system were admissible "to establish such facts as the law requires to be kept",

2. The parties, in their respective arguments, make no distinction between the "ex parte" order of protection and the "full order" of protection.

*Edwards v. Firemen's Retirement System of St. Louis,* 410 S.W.2d 560, 568 (Mo.App. 1966); and the record of a zoning commission meeting prepared as part of the city clerk's official duty was admissible to establish the zoning commission's approval of a subdivision's legal existence. *Phillips v. Board of Adjustment of Bellefontaine Neighbors,* 308 S.W.2d 765, 768 (Mo.App. 1958).

More specifically relevant here, a sheriff's return at common law was admissible under the "official records" exception. 5 Wigmore, *supra* § 1664. Although we have codified some of the other "official records" exceptions in specific statutes, Chap. 490 RSMo 1986, none of these statutes, individually or collectively, indicate a legislative intent to eliminate or limit the common law exception respecting a sheriff's return. This is understandable.

> A sheriff ... reporting the service of process is not reporting in the capacity of a police observer at the scene of a crime, nor is he ordinarily connected with the case in a law enforcement capacity. The "adversarial" circumstances which might render a law enforcement officer's observations unreliable are unlikely, therefore, to be present....
>
> *U.S. v. Union Nacional de Trabajadores,* 576 F.2d 388, 391 (1st Cir.1978).

This reasoning is particularly persuasive here. The sheriff had the statutory duty to serve the protective order on defendant, § 506.140, and was required to make the return of service. § 506.180. The protective order was served and the return made well before the crime charged here took place. The sheriff could have had no reason nor motive to falsify that return. The return, thus, was admissible to prove service of the protective order on the defendant.

■ This does not end the matter, however. The record does not show how the protective order file was brought before the court. The question, thus, remains whether the presence of the clerk of the court or the sheriff was essential as the sponsoring witness for that court file and the return it contained. The answer is: No.

Judicial notice of a fact normally "dispenses with the necessity of establishing that fact by evidence." *Scheufler v. Continental Life Ins. Co.,* 350 Mo. 886, 169 S.W.2d 359, 365 (1943). Since the fact judicially noticed may be established without supporting evidence, that fact must have independent reliability and trustworthiness. In Missouri, judicial notice may be taken of a fact which is common knowledge of people of ordinary intelligence, *Endicott v. St. Regis Investment Co.,* 443 S.W.2d 122, 126 (Mo.1969), and it may be taken of a fact, not commonly known, but which can be reliably determined by resort to a readily available, accurate and credible source. *E.g., State v. Jordan,* 761 S.W.2d 685, 687 (Mo.App.1988); *see, generally, Hagen v. Perryville Board of Aldermen,* 550 S.W.2d 797, 798–99 (Mo.App.1977). Within the latter group of facts are certain facts established within a court's own records. *See, e.g., Randall v. St. Albans Farms, Inc.,* 345 S.W.2d 220, 223 (Mo.1961). However, when judicial notice is based upon another court file, the other court file must be independently proved, *Id.; see also, Hume v. Wright,* 274 S.W. 741, 744 (Mo.1925); *Richards Brick Co. v. Wright,* 231 Mo. App. 946, 82 S.W.2d 274, 279 (1935), and introduced into evidence. *E.g. State v. Pennick,* 364 S.W.2d 556, 559 (Mo.1963).

Requiring independent proof of the other court file insures the existence and genuiness of that court file as well as providing the opposing party an opportunity to attack the propriety of taking such judicial notice, and the independent proof may be made by the court taking judicial notice of its own file, provided that file is physically before the court. *Arata v. Monsanto Chemical Co.,* 351 S.W.2d 717, 721 (Mo.1961); *Wahl v. Cunningham,* 332 Mo. 21, 56 S.W.2d 1052, 1060 (Mo. banc 1932). Requiring the introduction of the other file into evidence insures an intelligible record for review, for the appellate court cannot take "a corresponding judicial notice". *Pennick, supra,* 364 S.W.2d at 559. And, the introduction of the other court file into evidence may also be accomplished by the court taking

judicial notice of the file if the file is physically before it. *Arata* and *Wahl, supra.*

Here, the court file of the protective order case was physically before the trial court. In taking judicial notice of its own file, the court made it part of the record by expressly noting on the record it specifically was taking judicial notice of the sheriff's return in that file to prove service of the protective order on defendant. We find no error in this evidentiary procedure.

Defendant also contends the use of the sheriff's return violated his "right to confront witnesses against him, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution." Defendant makes this bald statement in his Points and again in the Argument portion of his brief. He does not, however, develop this argument with reasoning nor support it with any citations to law. Therefore, if he did properly preserve this issue for review, he abandoned it on appeal. *E.g., State v. Trader Bobs, Inc.,* 768 S.W.2d 183, 187 (Mo.App.1989); *State v. Hughes,* 748 S.W.2d 733, 737 (Mo.App.1988).

Judgment affirmed.

SMITH, P.J., and CARL R. GAERTNER, J. concur.