Claude L. **LANGLEY**, D.V.M., et ux.,
Plaintiffs-Respondents,

v.

Harvey R. **MICHAEL**, M.D., and
Smith-Glynn-Callaway Clinic,
Inc., Defendants-Appellants.

No. 14151.

Missouri Court of Appeals,
Southern District,
Division One.

April 3, 1986.

Motion for Rehearing or to Transfer to Supreme Court Denied April 24, 1986.

Application to Transfer Denied
June 17, 1986.

B.H. Clampett, Max E. Lilley and Patrick K. Roberts, Daniel, Clampett, Rittershouse, Lilley, Dalton, Powell & Cunningham, Springfield, for defendants-appellants.

John R. Courtney, Courtney & Peebles, P.C., Springfield, for plaintiffs-respondents.

PER CURIAM.

Defendants, Dr. Harvey Michael and his employer, Smith-Glynn-Callaway Clinic, Inc. (Smith-Glynn), appeal from a judgment affirming a jury verdict in the sum of $300,000 in favor of plaintiff, Dr. Claude Langley. Michael is an M.D., specializing in orthopedic surgery. Langley is a general veterinarian. Langley sued Michael and Smith-Glynn, alleging medical malpractice in Michael's treatment of his injured thumb.

The cause was submitted on a verdict directing instruction that told the jury their verdict must be for Langley if they believed that on May 24, 1983, Langley had infection in his right thumb which Michael negligently failed to culture, debride, and adequately cleanse and irrigate, and that, as a result of such negligence, Langley sustained damage.

In their first assignment of error, defendants assert that Langley's verdict directing instruction was erroneous for lack of evidentiary support.

In considering this assertion, we view the evidence and all reasonable inferences de-

rived therefrom in the light most favorable to the party who offered it, disregarding all evidence and inferences to the contrary. *Hartenbach v. Johnson,* 628 S.W.2d 684, 688 (Mo.App.1982).

Viewed in that light, there was substantial evidence introduced that on Friday, May 20, 1983, Langley, while attempting to deliver a breeched calf, slipped and fell in a barnyard. His right thumb was injured in the fall. When Langley attempted to clean the mud and manure from his hands, he noticed his right thumbnail was blue and depressed at least ¼ of an inch under the skin at the base of the nail. Langley went to the office of his personal physician, Dr. Alfred Staeger, an osteopath, who examined the thumb. Langley's thumb was swollen, dirt was under the nail, and the nail was depressed into the nail bed. Dried blood was visible at the base of the nail and "there was a little discharge there and quite a tear or laceration of that area" (about ⅜ inch behind the cuticle). An x-ray revealed a fracture of the distal phalanx of Langley's thumb. By reason of the nature of the wound and fracture, Staeger referred Langley to Smith-Glynn for treatment.

At Smith-Glynn, Langley's thumb was again x-rayed, and a nurse brushed the thumb with a gauze pad saturated with a betadine solution. Langley told Michael that he had fallen in a barn lot and injured his thumb. Michael did not take any significant history from Langley concerning the accident, or discover the nail depression and discharge from the base of the nail. Michael diagnosed the injury as a closed fracture of the distal phalanx of the thumb, immersed the thumb in the betadine solution, deadened the thumb with a local anesthetic, reduced the fracture by manipulation, and applied a splint. Michael told Langley to elevate the thumb and use ice packs on it, and gave him an appointment for a follow-up examination the following Friday.

Langley's pain did not subside but, in fact, increased. On Sunday, May 22, he unsuccessfully attempted to contact Michael. Dr. Ben C. Harmon, another orthopedic surgeon employed by Smith-Glynn, returned Langley's call, advised Langley that pain and swelling were to be expected, and told him to loosen the splint. The pain and swelling persisted. Langley again contacted Smith-Glynn and was given an appointment to see Michael on Tuesday, May 24.

On May 24, when Michael examined the thumb, he noticed that there was a bluish discoloration of Langley's swollen thumb, that the nail was loosened from the nail bed and that there was a serous discharge coming from the base of the nail. Michael knew that Langley's injury was now "an open situation," and knew, or should have known, that the drainage and loosened nail were suggestive of infection. Michael did not culture the discharge to determine if it was caused by a bacterial infection, or deeply cleanse or irrigate the area of suspected infection, or debride or surgically remove any devitalized tissue from the wound site. Michael told Langley his thumb "looked all right," and applied a new splint. Claude's pain became more severe, and the swelling increased. When attempts to contact Dr. Michael were unsuccessful, Mrs. Langley took Claude to the emergency room at St. John's Regional Health Center on Thursday, May 26. When the splint was removed, Langley's thumb was "all black and rotten — stinking."

The distal portion of Langley's thumb was then amputated by Dr. Marion Wolf. Later, Dr. Darrell Domann, a reconstructive surgeon, operated on Langley's thumb to provide a full thickness skin flap over the end of the stump. The loss suffered by Langley severely handicapped him in performing the duties of his profession as a veterinarian.

Dr. Dale E. Darnell, a board certified orthopedic surgeon, testified that, in his opinion, Michael's failure, on Tuesday, May 24, to deeply cleanse, irrigate, and debride the injured area of Langley's thumb, and to culture fluids taken from it, constituted a departure from that degree of skill and

learning ordinarily used under the same or similar circumstances by members of the medical profession, and that such lack of care directly contributed to cause the loss of Langley's thumb. These facts and expert opinions, and reasonable inferences derived therefrom, were sufficient to support a jury verdict for Langley on the basis of the verdict directing instruction. The point has no merit.

Defendants next contend that the trial court erred in overruling their objections and requests for mistrial because of alleged improper and prejudicial closing argument by Langley's attorney. They assert that Langley's attorney argued Michael was negligent in his treatment of Langley on Friday, May 20, while the verdict director predicated a finding of negligence in the treatment of Langley on Tuesday, May 24, and that he argued Michael was negligent in failing to obtain an adequate history from Langley, when such failure was not included in the verdict director as a charge of negligence, thus permitting argument of issues outside the record.

■ Regulation of closing argument rests largely within the sound discretion of the trial court, whose opportunity to fairly appraise the impact of the argument is far superior to ours, and its rulings in this area will not be disturbed on appeal, absent a clear showing of an abuse of discretion. *Lewis v. Bucyrus-Erie, Inc.*, 622 S.W.2d 920, 925 (Mo. banc 1981).

■ A fair review of the applicable portion of the closing argument shows that Langley's counsel was saying that since Langley sustained his injury in a barnyard, had visible drainage at the base of his thumbnail and a loosened condition of the nail, and was suffering from increased pain and swelling, all facts which Michael knew, or should have known, on Tuesday, May 24, those factors should have alerted him that infection was rapidly spreading in Langley's right thumb, so that culturing, debriding, deep cleansing and irrigation of the wound, which procedures are recommended by medical experts when infection is sus-

pected, should have been done. Counsel was arguing matters that were in evidence, and the clear purpose of the argument was to show that Michael had good reason to suspect infection and treat it appropriately. The permissible field of argument is broad, and as long as counsel confines himself to the evidence and does not go beyond the issues and urge prejudicial matters or urge a claim or defense which the evidence does not justify, he is to be given wide latitude in his comments. *Hoehn v. Hampton*, 483 S.W.2d 403, 408 (Mo.App.1972).

■ The tracing of the history by Langley's attorney in closing argument of what happened, or did not happen, from the time of Langley's fall until the time of the amputation of his thumb, was based on facts in the record which went to the ultimate issue of whether Michael was negligent in his treatment of Langley on May 24. There was nothing prejudicial or improper in this portion of plaintiff's closing argument.

Defendants also complain that Langley's attorney improperly argued that contents of medical journals he read were admissible as independent evidence, and that the journals obviously supported his position, since defense counsel had produced none with contrary views.

During trial, Langley's attorney, in his cross-examination of Michael, asked if he agreed with certain statements in medical journals on the subject of open fractures to the effect that if a doctor suspicions infection at an open fracture site, the wound should be debrided and copiously irrigated, and a culture taken. Dr. Michael stated that he agreed with those statements.

In closing argument, while commenting on this phase of the evidence, Langley's attorney said:

> There was no history which could still have been taken on Tuesday taken [sic]. There's certainly, by anybody's definition, not a thorough and complex examine [sic] performed on Tuesday.

No culture was taken. No surgical exploration for foreign material or devitalized tissue, and none was removed.

And, there was no copious irrigation.

There is no excuse for the failure to do those things that are indicated in every medical journal that I have picked up. And, you've heard of none from the defense counsel that point out one or more of those things are not important ——.

Defense counsel objected and requested a mistrial on the grounds that Michael was not required to produce as evidence medical journals that contradicted the ones used by Langley's lawyer in cross-examination of Michael and, further, that the contents of the medical journals were not admissible evidence. Langley's counsel responded by saying:

Your Honor, I think it's a fair comment, as counsel well knows that the law permits you to bring in medical textbooks and cross[-]examine medical expert witnesses and I had medical expert witness and there was absolutely no cross[-]examination of him with the use of textbooks, the purpose of my reference.

The trial court overruled the objection and denied a mistrial.

█ Textbooks, journals, etc., on technical subjects are not, of themselves, direct and independent evidence, but may be used in cross-examination of an expert witness by reading therefrom, and asking the witness if he agrees with the statement read. *Hemminghaus v. Ferguson*, 215 S.W.2d 481, 489 (Mo.1948). The complained of portion of closing argument, while certainly not a model of stark precision, was essentially that there was no dispute as to how an open fracture wound should be treated, and that Michael did not treat it in that fashion. The transgression, if any, of Langley's counsel in his brief reference to the medical journals, was not considered by the trial court to be of sufficient importance to justify a mistrial. The brief reference to medical journals in the closing argument did not materially affect the merits of the action. The trial court did not abuse its discretion in overruling defendants' objection, and denying a mistrial.

█ In their remaining claim of error, defendants assert the trial court erred in permitting Langley's counsel, in the final portion of his closing argument, to argue, over objection, the issue of damages because he failed to argue that issue in the initial portion of his closing argument.

The record indicates that in the opening part of the argument, Langley's attorney stated that $850,000 was a fair and reasonable sum to compensate Langley for his injury. Before the defense made its closing argument, defense counsel claimed Langley had not argued damages in the opening portion of his argument and, therefore, should be precluded from doing so in the final portion. The objection was overruled.

In his closing argument, defendants' attorney argued elements of damage, including medical expenses, pain and suffering, and loss of income and suggested damages in the sum of $60,000. In his close, Langley's counsel explained how he had arrived at the $850,000 damage figure. Langley's attorney mentioned a dollar amount of $850,000 in the opening portion of his argument, which came as no surprise, since he had already mentioned that figure in his voir dire examination and in his opening statement. Also, defense counsel commented on that figure and then suggested a lower amount. Since he did, the rule established in *Shaw v. Terminal R.R. Ass'n.*, 344 S.W.2d 32, 36 (Mo.1961), to the effect that a plaintiff may not completely withhold all argument on the subject of damages from the opening portion of his argument and concentrate all argument on the subject in the closing portion does not apply. *See Hart v. Forbes*, 633 S.W.2d 90, 95 (Mo.App.1982); *Barrett v. Morris*, 495 S.W.2d 100, 105 (Mo.App.1973). The point is denied.

Judgment affirmed.

All concur.