**Audrey BYERS and Larry Byers, Appellants,**

v.

**Kenneth A. SPAULDING, Respondent.**

**No. WD 37820.**

Missouri Court of Appeals, Western District.

March 10, 1987.

**894**

George A. Wheeler, Kansas City, for appellants.

Karon D. Ramsey, Kansas City, for respondent.

Before CLARK, C.J., and KENNEDY and NUGENT, JJ.

CLARK, Chief Judge.

Appellants, wife and husband, sued respondent Kenneth Spaulding, a medical doctor, and Baptist Memorial Hospital, for damages alleged to have been suffered by the wife in consequence of excessive and unchecked bleeding following a tonsillectomy. The trial court directed a verdict for the defendants at the close of plaintiffs'

evidence. The appeal is prosecuted only as to defendant Spaulding.

The following facts are not disputed. Audrey Byers consulted Spaulding because of swelling in her throat and difficulty in swallowing. Removal of her tonsils was recommended. Audrey was admitted to the hospital March 3, 1983 and the tonsillectomy was performed March 4, 1983. Because of her complaints about soreness in her throat, Audrey remained in the hospital until March 10, 1983 when the events alleged to have been the basis for the cause of action occurred.

Additional evidence in the case, which predictably would have been contested, is summarized in the light most favorable to appellants giving them the benefit of all inferences reasonably drawn therefrom. *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 879 (Mo.App.1985). So stated, it appears that in the early morning hours of March 10, 1983, Audrey commenced spitting up blood and rang for a nurse. Audrey was told there was no cause for alarm and a nurse did not actually come to Audrey's room for some twenty-five minutes. Thereafter, Audrey received attention from nurses who applied treatment of cold towels and an ice collar.

Sometime later, but evidently within approximately one to two hours after the onset of the bleeding, a Dr. Cortez arrived at the hospital and rendered some treatment to Audrey. The nature of or necessity for the treatment was not included in the evidence given. Dr. Cortez had been summoned by Audrey's mother whom Audrey had telephoned to complain about the lack of attention from the nurses. Dr. Cortez and an associate, Dr. Pinsker, replaced Dr. Spaulding in attending Audrey. The patient was discharged from the hospital two days later, apparently without further incident.

The witnesses who testified on behalf of appellants as plaintiffs below were Audrey, her husband, and Audrey's mother, Mattie Jackson. No medical witness testified and no expert medical evidence was presented. At the close of plaintiffs' case, the court directed a verdict for defendants.

The appeal asserts two points of error, but each makes essentially the same contention. At trial and here, appellants contend they made a submissible case by their evidence establishing a cause of action against Dr. Spaulding for "abandonment as an intentional tort and abandonment as negligence per se." They argue that the cause of action was not for malpractice and therefore expert medical testimony was not necessary.

We first observe that the same facts cannot give rise to causes of action both for intentional tort and negligence. Negligence is strictly associated with non-feasance or a wrongful act resulting from inattention or carelessness and not from design. Negligence does not include a purpose to do a wrongful act. *Harris v. Penninger,* 613 S.W.2d 211, 214 (Mo.App.1981). The evidence presented by appellants did not demonstrate any purposeful conduct by respondent, either active or passive. At most the proof was of an unsuccessful attempt by a nurse to contact respondent by telephone. There was no evidence respondent received the message, much less that he ignored it. The claim of an intentional tort therefore merits no further discussion.

Appellants' brief acknowledges that the gist of the cause of action against Dr. Spaulding was for his failure to take proper care of Audrey after the operation. In the absence of any evidence, or even a claim, that the bleeding was a consequence of some deficiency in the surgical procedure or in the after care rendered before the bleeding commenced, the case rests solely on the contention that Dr. Spaulding should have been immediately available to respond to Audrey's call when the bleeding was noticed. The failure by appellants to seek review of the directed verdict in favor of the hospital also eliminates consideration of any deficiences in nursing care or response by hospital personnel.

The record is silent as to any facts bearing on Dr. Spaulding's part in activities on the night in question. There was no evidence as to where he was, what facilities were available to contact him, who the nurse called, what answer she received, if any and, most importantly, no proof Dr. Spaulding ever received the message about Audrey's distress. Even assuming, for purposes of addressing the point, that a cause of action for inadequate medical attention could be made on general negligence without proof of a standard of professional care, appellants here made no case.

One of the elements of an action for negligence is the existence of a duty on the part of the defendant to protect the plaintiff from injury. *St. John Bank & Trust Co. v. City of St. John,* 679 S.W.2d 399, 401 (Mo.App.1984). The duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Lowrey v. Horvath,* 689 S.W.2d 625, 627 (Mo. banc 1985). It therefore follows that a plaintiff asserting a cause of action based on the negligence of another in failing to act must allege and prove that the defendant knew or should have known that failure to act was likely to result in injury to the plaintiff.

One of the components of a medical malpractice cause of action originates in the physician-patient relationship from which a duty of care corresponding to standards of the profession applies. If, as appellants here contend, their case was not one for malpractice but was based on general concepts of negligence, it was their burden to prove (1) that a duty existed on the part of Dr. Spaulding to protect appellant from injury and, (2) that Dr. Spaulding knew or should have known that his failure to be available to attend appellant at the hospital was likely to cause injury. *Lowrey v. Horvath, supra.* Once appellants disclaimed reliance on malpractice as the basis for their claim, they could no longer depend on the physician-patient relationship to establish a duty of care.

Appellants presented no evidence either to show some continuing duty on the part of respondent to provide care after the operation or any awareness on his part that there was any likelihood of injury from

complications such as the bleeding Audrey experienced. Without proof that Dr. Spaulding was made aware of Audrey's condition and refused to render treatment or was careless in giving prompt attention, appellants made no case of negligence entitling them to submit the issues to a jury.

 The difficulty with appellants' arguments is that if any claim at all was viable against Dr. Spaulding, it was a claim for medical malpractice. As such, it would have been appellants' burden to prove that failure by Dr. Spaulding to be available to attend Audrey's complaint of bleeding did not meet the standard of care commonly exercised by the ordinarily skillful, careful and prudent physician in the same or similar circumstances. *Piel v. Galbol*, 559 S.W.2d 38, 39–40 (Mo.App.1977). By such proof, a claimant establishes that the physician knew or should have known of his duty to the patient and the consequences of a failure to act. We can only assume that in this case, no such proof was available and appellants therefore resorted to the strategy of claiming abandonment as a species of general negligence. As the foregoing discussion demonstrates, however, a claim grounded in general negligence is no refuge for the claimant who is unable to sustain the burden of proving malpractice. The duty of care must be shown in either instance and without such proof, the case fails.

The judgment is affirmed.

All concur.