**Betty KELLY and Michael
Kelly, Appellants,**

**v.**

**ST. LUKE'S HOSPITAL OF KANSAS
CITY, Respondent.**

**No. WD 44374.**

Missouri Court of Appeals,
Western District.

March 17, 1992.

Thomas E. Hayes, Shamberg, Johnson, Bergman & Morris, Chartered, Kansas City, for appellants.

Thomas W. Wagstaff, Randy P. Scheer, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Betty Kelly and Michael Kelly, the surviving spouse and son of the Reverend Rex Kelly, deceased, appeal from the judgment in favor of St. Luke's Hospital of Kansas City ("St. Luke's Hospital"). Appellants sued St. Luke's Hospital for the alleged wrongful death of the Reverend Kelly, contending that the hospital is vicariously liable for purportedly negligent emergency room treatment by physicians, Drs. Michael Weaver and Henry Arst.

Appellants' appeal is limited to three issues. First, appellants contend that the trial court erred in striking their amended claim, which averred that St. Luke's Hospital was vicariously liable for the alleged negligence of Dr. Michael Weaver,. an independent contract physician,[1] on a nondele-

---

**1.** Dr. Weaver is a physician employed by American Medical Services Association, which con- tracted with St. Luke's Hospital to provide Dr. Weaver as an independent contract physician to

gable duty theory. Second, appellants argue that the trial court erred in refusing to admit into evidence during their case-in-chief an article, authored by Dr. Geoffrey Hartzler, discussing the availability of cardiac treatment at the Mid–America Heart Institute at St. Luke's Hospital. Finally, appellants assert that the trial court erred in refusing to admit in its entirety a letter written by the Reverend Kelly approximately one day before his death. The judgment is affirmed.

On September 27, 1984, the Reverend Kelly complained of burning chest pain to personnel in the emergency room at St. Luke's Hospital. The Reverend Kelly had experienced similar symptoms earlier that day and approximately four to seven days before September 27. Upon his arrival at the hospital on September 27, the Reverend's medical history was taken, a physical examination was performed, and testing, including an EKG, was completed.

After the tests and physical examination were performed at St. Luke's Hospital, Dr. Gerald Peterson, the Reverend Kelly's personal physician, was consulted by a person at St. Luke's Hospital regarding test results. The Reverend Kelly had visited Dr. Peterson earlier on September 27, complaining of the same or similar discomfort. Dr. Peterson had performed tests on the Reverend Kelly similar to those conducted at St. Luke's Hospital. Although a possible cardiac problem was pondered, the Reverend Kelly's symptoms were considered more consistent with gastrointestinal problems and a differential diagnosis was rendered accordingly by Dr. Michael Weaver, the emergency room physician then on duty and Dr. Henry Arst, a resident physician and employee of St. Luke's Hospital. This diagnosis was consistent with Dr. Peterson's conclusion earlier that day. Nevertheless, the Reverend Kelly was offered admission to St. Luke's Hospital to permit monitoring of his medical situation, but he declined. Because the Reverend Kelly refused patient admission to St. Luke's Hospital, he was instructed to see his personal physician, Dr. Peterson, the very next morning for a follow-up examination. The Reverend Kelly did not visit Dr. Peterson's office on September 28, 1984, as advised.

The Reverend Kelly was examined by physicians at least three more times prior to his death on October 3, 1984. On September 30, 1984, the Reverend Kelly experienced discomfort and was seen by a physician at the Arkansas City Memorial Hospital's emergency room in Arkansas City, Kansas. Again, the Reverend Kelly's symptoms were diagnosed as gastrointestinal in nature. On October 1, 1984, the Reverend Kelly was again seen at the emergency room in Arkansas City, Kansas. His symptoms were diagnosed as pneumonia, but the Reverend Kelly declined admission as a hospital patient. The Reverend Kelly was advised to see his personal physician as soon as possible. On October 2, 1984, the Reverend Kelly again saw his personal physician, who continued treating the Reverend Kelly with antibiotics. On October 3, 1984, the Reverend Kelly died suddenly when his heart ruptured.

Appellants sued St. Luke's Hospital following the Reverend Kelly's death. Approximately one week before trial, appellants moved the court for permission to amend their petition by adding two additional theories of recovery in support of their claim against St. Luke's Hospital. Appellants alleged the hospital is responsible for the negligence of independent contract physician, Dr. Weaver, on an apparent agency theory and a nondelegable duty theory. The trial court granted plaintiffs leave to amend.

On October 26, 1990, St. Luke's Hospital filed its motion to dismiss or to strike plaintiffs' claim based on the nondelegable duty theory. Specifically, respondent argued that, although vicarious liability in the context of medical negligence cases had been established under well-recognized theories of agency, ostensible agency, and responde-

serve in St. Luke's Hospital's emergency room. Appellants have conceded that Dr. Weaver is not an employee of St. Luke's Hospital.

at superior, Missouri courts have never recognized the theory of nondelegable duty to establish vicarious liability of a hospital for the negligence of an independent contract physician.

The trial court found that the practice of emergency room medicine does not involve inherently dangerous activities or other circumstances necessary to invoke the nondelegable duty doctrine. The trial court also noted the absence of any Missouri appellate decisions regarding the application of a nondelegable duty theory in medical malpractice cases. Based on its findings, the trial court held that the nondelegable duty theory was inapplicable and sustained St. Luke's Hospital's motion to strike appellants' amended claim.

Appellants submitted their case to a jury on both the apparent agency theory for the alleged negligence of Dr. Weaver, and the respondeat superior theory for the alleged negligence of Dr. Arst, a resident/employee of St. Luke's Hospital. The comparative negligence of the Reverend Kelly in failing to visit Dr. Peterson on September 28, 1984, was also submitted to the jury. The jury returned a unanimous verdict in favor of St. Luke's Hospital, finding no fault on behalf of St. Luke's Hospital and no fault on behalf of the Reverend Kelly. Appellants' motion for new trial was overruled by the trial court. This appeal followed.

I

Appellants contend, as their first point on appeal, that the trial court erred in dismissing their amended claim that St. Luke's Hospital was vicariously liable for the nondelegable duties performed by Dr. Weaver, the hospital's emergency room director. Appellants argue that St. Luke's Hospital is vicariously liable for Dr. Weaver's purportedly deficient conduct based on the nondelegable duty doctrine for the following reasons: Missouri statutes and reg- ulations impose nondelegable duties upon St. Luke's Hospital to properly maintain its emergency room; St. Luke's Hospital had a nondelegable duty to avoid the ordinary and peculiar risks of harm involved in the practice of medicine; and St. Luke's Hospital cannot rely upon a secret contract to deny liability for the acts of its emergency room staff.

As a general rule, a party "who contracts with an independent contractor is not liable for the negligent acts of the independent contractor." *Brandt v. Missouri Pac. R.R. Co.,* 787 S.W.2d 781, 782 (Mo.App.1990). However, the law recognizes several exceptions to this rule. Appellants rely upon two recognized exceptions in their appeal. First, statutes or regulations can preclude delegation of certain duties. *Blum v. Airport Terminal Serv., Inc.,* 762 S.W.2d 67, 77 (Mo.App. 1988). Secondly, a party may not contract away to independent contractors potential liability for inherently dangerous activities. *Ballinger v. Gascosage Elec. Coop.,* 788 S.W.2d 506, 511 (Mo. banc 1990).

Appellants maintain that St. Luke's Hospital, as a publicly licensed hospital, may not delegate or assign to other entities its responsibilities to provide emergency diagnostic services. Appellants find the authority for their proposition in the state regulations regarding publicly licensed hospitals. Specifically, appellants cite 19 CSR 30–20.021(3)(C)3 [2] as the significant regulation. Appellants contend that the term "staff physician" in the regulation is a clear mandate that the particular position held by Dr. Weaver must be filled by a hospital employee, and not an independent contractor. 19 CSR 30–20.021(3)(C)3. Appellants also argue that St. Luke's Hospital's governing board has exclusive responsibility for the operation of the hospital, including the emergency room, pursuant to 19 CSR 30–20.021(2)(A)10,[3] a responsibility

---

**2.** 1. This section prescribes that "[e]mergency services shall be under the medical direction of a qualified staff physician responsible for implementing rules of the medical staff relating to patient safety and privileges and to the quality

and scope of emergency services." 19 CSR 30–20.021(3)(C)3.

**3.** This section states that the "[b]ylaws of the governing body [of the hospital] shall require that the medical staff, hospital personnel and all auxiliary organizations shall directly or indirect-

which may not be assigned to American Medical Services Association. Section 197.-060, RSMo 1986.

Appellants aver that the contract between St. Luke's Hospital and American Medical Services Association, which provides Dr. Weaver's medical services to St. Luke's Hospital as an independent contract physician, is void because it is violative of 19 CSR 30–20.021(3)(C)3 and § 197.060. Furthermore, appellants argue alternatively that if the contract is valid, then these statutes and regulations make the duties assigned by St. Luke's Hospital to Dr. Weaver, which include the management and responsibility of supervising the emergency room at St. Luke's Hospital, nondelegable.

In addition to the statutory and regulatory authority previously cited, appellants also direct this court's attention to the case of *Blum* as supporting authority. 762 S.W.2d at 77. *Blum* held that the city of St. Louis was vicariously liable for the negligence of an independent contractor because federal airport regulations imposed a nondelegable duty upon the city to provide certain airport fuel services. *Id.* Appellants contend that both Missouri statutes and regulations impose upon St. Luke's Hospital certain nondelegable duties which, pursuant to the holding in *Blum,* make St. Luke's Hospital vicariously liable for Dr. Weaver's alleged negligent diagnosis of the Reverend Kelly's ailment.

Appellants' interpretation of state regulations and statutes regarding publicly licensed hospitals is erroneous. Statutory authority that imposes upon publicly licensed hospitals the nondelegable duty to provide competent emergency room services is non-existent. Chapter 197 of the Missouri Revised Statutes does not impose vicarious liability on a hospital for the negligence of an independent contract physician. Furthermore, 19 CSR 30–20.021(3)(C)1 and (C)3 merely impose a duty upon St. Luke's Hospital to properly equip and competently staff its emergency room; the regulations

do not mandate upon St. Luke's Hospital the purported nondelegable duty. The record is devoid of allegations by appellants that St. Luke's Hospital improperly equipped or staffed its emergency room. Finally, 19 CSR 30–20.021(3)(C)3 does not require that an employee of a publicly licensed hospital directly supervise the hospital's emergency room. The term "qualified staff physician" referenced in the regulation does not imply that actual employment is required. 19 CSR 30–20.021(3)(C)3. Therefore, no Missouri statutes, regulations, or case law impose a nondelegable duty upon St. Luke's Hospital for the maintenance of its emergency room care.

■ Appellants also assert that because emergency room care services are inherently dangerous or involve a peculiar risk of physical harm to others, a nondelegable duty compelled St. Luke's Hospital to provide emergency room care. Appellants have not cited authority characterizing the practice of medicine as an inherently dangerous activity or involving special or peculiar risks of harm. This contention is without merit.

The Missouri Supreme Court has defined the test for determining when an activity is inherently dangerous. *Smith v. Inter–County Tel. Co.,* 559 S.W.2d 518, 522 (Mo. banc 1977). The court stated:

> "[T]hat if the doing of the work necessarily causes dangers which must be guarded against, then the employer must see to it that such dangers are guarded against, and cannot relieve himself by casting this duty on an independent contractor. If, however, the work is dangerous only by reason of negligence in doing it, then the liability falls only on the independent contractor. In the one case the doing of the work creates danger and requires active care to counteract the danger. In the other there is no danger unless created by negligence."

*Id.* (quoting *Carson v. Blodgett Constr. Co.,* 189 Mo.App. 120, 174 S.W. 447, 448 (1915)). The practice of emergency room

---

ly, [sic] be responsible to the governing body through the chief executive officer." 19 CSR

30–20.021(2)(A)10.

medicine is not an activity that " 'starts with danger and requires preventive care to make safety,' " which would characterize the practice of medicine as an inherently dangerous activity; instead, the practice of emergency room medicine " 'starts with safety and requires negligence to make danger.' " *Id.* Therefore, the trial court properly held that the practice of emergency medicine is not an inherently dangerous activity.

■ As appellant's final argument regarding the nondelegable duty theory, they contend that St. Luke's Hospital's contract with Dr. Weaver was a secret contract, which, they argue, cannot alleviate the hospital's duty to exercise reasonable care in maintaining its emergency room operations. Appellants' failure to include this issue in their motion for new trial prevents them from raising the issue for the first time on appeal. Rule 78.07. Therefore, the issue is not considered. Appellants' first point is denied.

## II

■ Appellants' next point on appeal asserts that the trial court erred in excluding as evidence a medical article regarding cardiological procedures available at St. Luke's Hospital. Appellants contend that their expert, Dr. Lee, should have been allowed to testify regarding the contents of this article pursuant to § 490.065(3), RSMo Supp.1990. Appellants argue that the article is admissible as evidence because the article was (1) made known to Dr. Lee before the hearing, (2) the article is the type of article reasonably relied upon by experts in Dr. Lee's field, and (3) the article was otherwise reasonably reliable. *See* § 490.065(3).

Appellants maintain that the article was "dispositive of the availability, frequency of use, and documented success rate of specific cardiological procedures available at St. Luke's Hospital." Therefore, appellants argue, the article should have been admissible under § 490.065. As a result of the trial court's error, appellants contend they were prejudiced in their attempt to

show that St. Luke's Hospital could have saved the Reverend Kelly's life.

■ The record establishes that appellants, during direct examination, attempted to introduce the content of the article through the testimony of their expert witness to prove the truth of the matter asserted in the article. The Missouri Supreme Court has recognized "that text books on technical subjects are not of themselves direct and independent evidence." *Hemminghaus v. Ferguson,* 358 Mo. 476, 215 S.W.2d 481, 489 (1948); *see also Powers v. Ellfeldt,* 768 S.W.2d 142, 148 (Mo.App.1989). Learned treatises, such as the article involved in this appeal, may be used during cross-examination to test or challenge an expert's testimony. *Id.* However, the article is inadmissible hearsay during direct examination of appellants' expert witness.

■ Additionally, assuming arguendo that the trial court erroneously excluded the article during appellants' expert's examination, appellants would not have been entitled to a new trial because appellants could not have suffered prejudice. "Any error in the exclusion of any evidence is … harmless if the same facts are shown by other evidence and exhibits." *Around the World Importing, Inc. v. Mercantile Trust Co., N.A.,* 795 S.W.2d 85, 89 (Mo.App.1990). Appellants' experts, Drs. Lee and Preston, testified about the availability and success of cardiac treatment available at St. Luke's Hospital. This testimony encompassed the content of the disputed article. Thus, the substance of the article was cumulative of Dr. Lee's and Dr. Preston's testimonies. Therefore, the appellants could not have suffered prejudice. *Id.* Appellants' second point is denied.

## III

■ Appellants' final point on appeal contends that the trial court's ruling excluding portions of the Reverend Kelly's letter to his family written the day before his death is in error because the letter is admissible under the state of mind exception to the hearsay rule. The requirements for admissibility under the state of mind

exception to the hearsay rule are that the out-of-court statement must be a contemporaneous statement reflecting the then existing state of mind of the declarant, and that the then existing state of mind must be relevant to a genuine issue in the case. *Missouri Cafeteria, Inc. v. McVey,* 362 Mo. 583, 242 S.W.2d 549, 554 (1951). Appellants contend that this letter is germane to the issue of the Reverend Kelly's comparative fault and the possibility that he would have survived had he received proper medical treatment at St. Luke's Hospital.

This argument fails for two reasons. First, the issue of comparative fault relates to whether the Reverend Kelly, as recommended by Dr. Weaver, sought the medical attention of his personal physician on September 28, 1984, the day after his examination at St. Luke's Hospital. The Reverend Kelly's disputed letter was written on October 2, 1984. Upon leaving the hospital, the Reverend Kelly was advised to have a follow-up examination by his personal physician the next day. Rev. Kelly failed to do this. Rev. Kelly's failure to seek the recommended examination on September 28 was the basis of the comparative fault instruction. Therefore, the October 2 letter was not relevant or contemporaneous to the Reverend Kelly's failure to see his physician on September 28, 1984.

Appellants also contend that failure to admit the letter was significant to the issue of comparative fault. " 'Refusal to admit evidence does not constitute reversible error unless it would have changed the result reached.' " *School Dist. of Independence, Mo., No. 30 v. United States Gypsum Co.,* 750 S.W.2d 442, 448 (Mo.App.1988) (quoting *Green v. Stanfill,* 641 S.W.2d 490, 492 (Mo.App.1982)). The inclusion of the entire letter could not have impacted on the issue of the Reverend Kelly's comparative fault because the jury did not assess any fault to him. Thus, appellants did not suffer any prejudice. Appellants' final point is denied. The judgment of the trial court is affirmed.

All concur.