**Louella HERRERA and Henry Herrera, Plaintiffs–Appellants,**

v.

**Nestor G. DiMAYUGA, M.D., and Mercy Hospital, a Missouri Corporation, Defendants–Respondents.**

No. 19578.

Missouri Court of Appeals,
Southern District,
Division Two.

July 6, 1995.

Motion for Rehearing and Transfer to Supreme Court Denied July 28, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Mathew W. Placzek, Randy Alberhasky, Springfield, for appellants.

William R. Robb, Brad J. Fisher, William C. Love, Kent O. Hyde, Springfield, for respondents.

PREWITT, Judge.

Plaintiffs sought damages for negligence resulting in injuries to Plaintiff Louella Herrera, and for the death of their child, Martha Mary Herrera, on May 31, 1987. Following jury trial, verdicts were received in favor of Defendants on all issues, and judgment in accordance with the verdict was entered on February 23, 1994. Plaintiffs' motion for new trial was overruled on May 10, 1994. Plaintiffs appeal, presenting four points relied on, each pertaining to the admissibility of evidence.

Plaintiffs contend that Mrs. Herrera received improper emergency room treatment by defendant hospital and Dr. Dimayuga. They say this negligence caused the death of their unborn child and an emergency hysterectomy to Mrs. Herrera.

Plaintiffs are married and resided in Ava, Missouri. Dr. Dimayuga practices nearby in Mansfield, and Mercy Hospital is located in Hartville. On May 31, 1987, Mrs. Herrera went to the emergency room of Mercy Hospital because of abdominal pain. She informed the nurse on duty that a cesarean section was scheduled for June 12, and asked the nurse to call her obstetrician, Defendant Di-

mayuga. Mrs. Herrera also informed the nurse that she suffered from a placenta previa condition during her previous pregnancy, which pregnancy concluded with the birth of a child through a cesarean procedure.

The wrongful death claim was submitted against Defendant Dimayuga for failing to diagnose the cause of Louella Herrera's abdominal pain as being "obstetrical in origin, or" that he diagnosed it as "upper gastrointestinal bleed, or failed to perform a cesarean section on Louella Herrera." The wrongful death claim against Mercy Hospital was based on its emergency room nurse failing to recognize that Louella Herrera was in shock when she arrived there, or the nurse failing to timely contact a doctor who was present at the hospital and ask him to examine Louella Herrera, or the nurse failing to timely contact Defendant Dimayuga and ask him to examine her.

With one exception, later noted, it appears that there is no dispute on the accuracy of the following time table involving the parties on May 31, 1987:

3:18 p.m.—Plaintiffs arrive at emergency room of Defendant Mercy Hospital.

4:00 or

4:20 p.m.—Mrs. Herrera examined by emergency room physician, Dr. Ball.[1]

4:25 p.m.—Mrs. Herrera's blood pressure drops to 0/0 and she is administered oxygen and an IV.

4:30 p.m.—Defendant Dr. Dimayuga notified.

4:42 p.m.—Dr. Dimayuga arrives at emergency room.

5:00 p.m.—Dr. Dimayuga notifies St. John's Regional Health Center's emergency room in Springfield, and helicopter is notified.

5:11 p.m.—Helicopter leaves St. John's.

5:29 p.m.—Helicopter arrives at Mercy Hospital.

5:47 p.m.—Helicopter leaves Mercy Hospital with Mrs. Herrera.

6:08 p.m.—Helicopter arrives at St. John's with Mrs. Herrera.

6:35 p.m.—Obstetrician at St. John's examines Mrs. Herrera.

between 6:28 and 6:50 p.m.—infant dies in utero.

7:12 p.m.—Cesarean section and hysterectomy performed at St. John's following rupture of the uterus.[2]

As earlier mentioned, each of Appellants' four points deals with either the rejection or reception of evidence. The trial court is granted broad discretion in the admissibility of evidence and evidentiary rulings will not be disturbed on appeal absent an abuse of discretion. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991).

By their first point, Plaintiffs contend that the trial court erred in refusing to admit into evidence portions of minutes of Mercy Hospital's medical and nursing staff meetings and Quality Assurance Committee. Plaintiffs claim these were relevant on the issue of notice to the hospital that there were deficiencies in its employees' timely assessing obstetrical patients and timely contacting a doctor. Plaintiffs say these documents were also notice to Defendant Dimayuga that there were problems at the hospital with the timeliness and quality of nursing assessment and arranging for emergency cesarean sections.

Plaintiffs offered seven excerpts from six sets of these minutes. Defendants objected that each was irrelevant or too remote in time and that six of the offers were from documents protected from entry into evidence by the "peer review statute", § 537.035 RSMo 1994. The trial court sustained the objections.

The evidentiary test for relevancy is whether the facts tend to prove or disprove facts at issue or corroborate other relevant evidence. *Brown v. Hamid,* 856 S.W.2d 51, 56 (Mo. banc 1993). Because determining whether evidence is relevant is often subjective, a trial court is accorded

---

1. Plaintiffs say Mrs. Herrera was first examined by Dr. Ball at 4:20 p.m. Defendant hospital places this 20 minutes earlier.

2. St. John's Regional Health Center was originally a defendant, but was dismissed without prejudice by Plaintiffs previous to trial.

considerable discretion in ruling on its admissibility. *Woodiel v. Barclay Enter., Inc.,* 858 S.W.2d 247, 252 (Mo.App.1993). Unless the trial court's discretion is abused, exclusion of evidence on relevancy grounds is not a basis for reversal. *Id.* Accordingly, where evidence is excluded, the issue is not whether the evidence was admissible, but whether the trial court abused its discretion by excluding it. *Id.*

Neither the petition upon which the case was tried, nor the evidence indicates that notice was an element of the malpractice charged. To establish malpractice, plaintiffs must show: (1) an act or omission which failed to meet the requisite medical standard; (2) that act or omission was negligence; and (3) causal connection between that act or omission and the injury. *Langton v. Brown,* 591 S.W.2d 84, 88 (Mo.App.1979).

Plaintiffs contend that notice of problems in the hospital was admissible, primarily relying upon cases involving dangerous conditions of property and language from *Byers v. Spaulding,* 725 S.W.2d 893, 895–896 (Mo. App.1987). The statement in *Byers* does not aid Plaintiffs. It related to a patient's bleeding after surgery and lack of proof that the medical doctor was aware of that condition. Where it is claimed that a dangerous condition existed upon property, notice of the condition is relevant. *See, e.g., Stacy v. Truman Medical Ctr.,* 836 S.W.2d 911, 926 (Mo. banc 1992). This claim, of course, is not based upon a condition of property.

Nor does *Bateman v. Rosenberg,* 525 S.W.2d 753 (Mo.App.1975), also cited by Plaintiffs, aid them. It related to a condition of a patient "which requires continuous or frequent expert attention." The court concluded that if the doctor was personally unable to attend a person under these circumstances, he has an obligation to see that persons who are to be attending the patient are competent to look after the patient. 525 S.W.2d at 756. Here, once Dr. Dimayuga learned of the condition, he reacted promptly. The claim against him is for improperly diagnosing Mrs. Herrera and failing to perform a cesarean section promptly on her.

The documents here do not relate to Mrs. Herrera's condition, only previous problems at the hospital. "Generally, other acts of negligence are inadmissible to show the actor was negligent on the occasion in question." *Darnaby v. Sundstrom,* 875 S.W.2d 195, 198 (Mo.App.1994). A doctor's lack of skill in treating other patients is not relevant. *Id.* See also *Deveney v. Smith,* 812 S.W.2d 810, 812–813 (Mo.App.1991).

The issue was whether the actions or omissions of Defendants on May 31, 1987, caused the injuries suffered by Plaintiffs. No portion of the offered exhibit addresses the events on that day. What may have occurred on other occasions adds little, if anything, to a determination of whether Defendants were guilty of malpractice on May 31, 1987. We find no abuse of discretion in finding that the minutes were not relevant. It is not necessary to discuss the applicability of § 537.035 RSMo 1994. Point I is denied.

■ Plaintiffs' second point contends the trial "court erred in admitting into evidence over [Plaintiffs'] objection Exhibit DDD, (a blow-up from the Williams Obstetrics textbook) because the document was hearsay, and therefore cannot be used as substantive evidence to prove any fact or issue in the case." When the document was offered, Plaintiffs' counsel stated, "Your honor, we object to the offering of Exhibit No. DDD, for the reason it's hearsay." The record does not reflect that DDD was referred to in the evidence after its admission. Plaintiffs' counsel says its admission kept him from arguing that it could only be used in testing an expert's credibility. No attempt to do so appears in the record.

■ Plaintiffs are correct that the excerpt cannot be used as substantive evidence, but the record does not establish that it was. It was used when Defendant Mercy Hospital's counsel cross-examined Defendant Dimayuga. Textbooks on technical subjects are not of themselves direct and independent evidence, but may be used in cross-examination of an expert witness. *Kelly v. St. Luke's Hosp. of Kansas City,* 826 S.W.2d 391, 396 (Mo.App.1992); *Langley v. Michael,* 710 S.W.2d 373, 377 (Mo.App.1986). *See also Grippe v. Momtazee,* 705 S.W.2d 551, 556–

557 (Mo.App.1986) (discussing use of literature in cross-examination).

■ Authoritative texts are proper for the jury to consider in passing on the credibility of an expert witness. *Powers v. Ellfeldt,* 768 S.W.2d 142, 147–148 (Mo.App.1989). Thus they are evidence which may be relevant to the jury's task. Although this was hearsay, as Plaintiffs' counsel states, it was allowed as proper material to be used in cross-examining an expert. Further, no prejudice due to its admission is shown. Point II is denied.

■ For their third point, Plaintiffs state:

The court erred in refusing [Plaintiffs'] offer of proof through [Plaintiffs'] expert witness, Arlene Favaregh, that the articles and text contained in [Plaintiffs'] Exhibit No. 52 were authoritative for the reason that under Missouri procedure a party is permitted to establish texts and articles as authoritative, so that they might be used to cross-examine opposing experts; by refusing this offer, the trial court prejudicially curtailed the right of [Plaintiffs] to cross-examine [Defendant] Mercy Hospital's expert Easter with "authoritative" sources.

■ Exhibit 52 consists of a list of fourteen titles dealing with obstetrics and emergency nursing. Further information on them is not provided. Standard textbooks used in the practice and teaching of a profession are vested with trustworthiness and reliability because they are generally subjected to meticulous scrutiny by the author's peers and not written from a biased or partisan point of view. *Grippe,* 705 S.W.2d at 556–557.

■ Other publications are not vested with the same trustworthiness, because many are "mere expressions of the authors' opinions on controversial subjects" or "relate to experimentation and speculation based upon preliminary studies and are intended to invoke comment and criticism." *Grippe,* 705 S.W.2d at 557. Consequently, the party propounding the written material must show that it is generally accepted and regarded as authoritative within the profession. *Id.*

■ The propounding party may establish that written material is authoritative during cross-examination of an opposing expert or may do so through his expert outside the hearing of the jury. *Gridley v. Johnson,* 476 S.W.2d 475, 481 (Mo.1972). The transcript reflects the following occurred out of the presence of the jury:

PLAINTIFFS' COUNSEL: [T]his is an offer of proof outside the hearing of the jury with respect to two issues that will come up concerning my expert witness, Arlene Favaregh. The first issue concerns what is and is not authoritative text.... [W]e offer through witness Favaregh, Exhibit No. 52, which is a a [sic] list of nursing manuals, textbooks, and articles that this witness considers authoritative and she has reviewed as being authoritative ... [W]e offer through her testimony to ask her as to whether or not Exhibit No. 52 is authoritative, and we believe her answer is yes, and that is the substance of our answer. And the purpose of the offer is to establish those items as authoritative so that we might cross-examine the Defendants' experts concerning those articles. We believe that the law in Missouri is that until a[n] article, or text, or manual in a particular area is identified as being authoritative, it cannot be used in cross-examination. And we make that offer, Your Honor, and we understand that this offer can be made with the same force and effect as if the witness had taken the stand and testified, and had recited what I have just recited. Is that correct, Gentlemen?

COUNSEL FOR MERCY HOSPITAL: Yes, as far as ——

COUNSEL FOR DR. DIMAYUGA: Yeah, I agree he can make the offer that way, but I object to it.

COUNSEL FOR MERCY HOSPITAL: I agree. The offer can be made in that fashion, but I likewise object to hearsay ...

COUNSEL FOR PLAINTIFFS: Again, Your Honor, we do not intend to offer the items into evidence, just the exhibit for the sole purpose of showing that the articles and manuals described are authoritative.

In their briefs, Defendants contend Plaintiffs failed to follow the proper procedure to establish the publications in Exhibit 52 as authoritative. However, the record belies

this contention. The dialogue above demonstrates that counsel for all parties concurred in the procedure employed. Plaintiffs' offer of proof set forth what the testimony of expert witness Favaregh would be, and Plaintiffs had Ms. Favaregh available if her actual testimony was required.[3]

Defendants did not object to the method used, but objected only on the grounds of hearsay and relevancy. In sustaining the objection, the trial court erred, as Plaintiffs were not offering the writings as substantive evidence, but only as authoritative texts for the purposes of cross-examination. The texts were relevant for that purpose.

Once their offer of proof was denied, Plaintiffs could not establish the writings as authoritative during direct examination of Ms. Favaregh, as the writings are inadmissible hearsay during direct examination. *Kelly,* 826 S.W.2d at 396. The remaining avenue for Plaintiffs was to elicit a concession from the opposing parties' experts that the publications were authoritative. This effort was thwarted when Mercy Hospital's expert, Nurse Easter, stated that she was not acquainted with the writing.

This Court must then determine whether Plaintiffs suffered prejudice by this error entitling them to a new trial. Text from the writings identified in Exhibit 52 are not contained in the record. It does not indicate what propositions from the writings Plaintiffs intended to use in cross-examining Ms. Easter regarding emergency room standards. The only area identified by Plaintiffs is a standard by which the Emergency Nurse's Association apparently stated that patients should be assessed and documented within twenty minutes of their arrival in the emergency room. Plaintiffs had other evidence of this proposition. Nurse Favaregh testified that a routine assessment should take no longer than fifteen minutes and, specifically, that Ms. Herrera's assessment should have taken not more than fifteen minutes. Nurse Ferguson, another expert for Plaintiffs, testified that an initial assessment should be completed in twenty minutes.

■ Error in the exclusion of evidence may be harmless if the same facts are shown by other evidence. *Kelly,* 826 S.W.2d at 396. Because the testimony of nurses Favaregh and Ferguson encompassed the only identified content of the writings in question, the proposition in the writing was cumulative of the nurses' testimony. This Court is not to reverse unless there is error "materially affecting the merits." Rule 84.13(b). As there was other evidence, the exclusion of the use of the writing is not likely to have affected the merits. Consequently, Plaintiffs have not established prejudice. Point three is denied.

■ Plaintiffs' final claim of error is that the court erred in refusing to admit Plaintiffs' bill from Mercy Hospital, because it established that Defendant "Mercy Hospital considers the normal time for full treatment in the emergency room as 30 minutes, and whereas [Plaintiff] Louella Herrera (a critical care patient) was not even seen by a doctor during the first 30 minutes after her admission to the emergency room."

In the argument portion of their brief, Plaintiffs contend the bill constitutes an admission by Mercy Hospital. Under the heading Service Description, the bill states, "Emergency Room, Routine (30 minutes) $22.00, Extended (price per ea. 15 mins.) Quantity 7, $86.10." Plaintiffs concede the bill is a standard billing form, prepared "without ever specifically assessing Louella Herrera's actual treatment." The bill was offered as part of Plaintiffs' rebuttal evidence. Plaintiffs' offer of proof consisted of the statement that the bill was offered "[f]or the purpose of showing that Mercy Hospital has a routine time for the emergency room as 30 minutes."[4]

A trial court has broad discretion in the admission of rebuttal evidence. *Gassen v. Woy,* 785 S.W.2d 601, 605 (Mo.App.1990). That case states:

A party cannot, as a matter of right, offer in rebuttal evidence which was proper or should have been introduced in chief, even though it tends to contradict the adverse party's evidence and, while the court may

---

**3.** Ms. Favaregh was the first witness called and her testimony commenced immediately upon return of the jury.

**4.** The parties stipulated that the bill was a business record for purposes of the hearsay rule.

in its discretion admit such evidence, it may and generally should decline to admit the evidence.

As the Plaintiffs alleged from the outset that the length of time Mrs. Herrera spent in the emergency room was unnecessarily long, if the bill may have established this, it could have been introduced during the Plaintiffs' case in chief. When offered, the bill did not introduce any new fact into the case, a factor relevant to deciding if an abuse of discretion occurred. *See Gassen,* 785 S.W.2d at 605.

Further, Plaintiffs did not establish that the bill was relevant. The bill does not purport to address the standard length of an emergency room stay for an obstetrics patient complaining of abdominal pain. The bill is a standard form used for all persons presenting themselves to the emergency room, regardless of the severity of their complaint. Under the standards discussed in *Woodiel* and *Gassen,* the trial court did not err in refusing to admit the hospital bill. Point IV is denied.

The judgment is affirmed.

GARRISON, P.J., and CROW, J., concur.