

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| SHARLEAN GORDON, | ) | No. ED112075 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 17SL-CC02721 |
| | ) | |
| MONSANTO COMPANY, | ) | Honorable Brian H. May |
| | ) | |
| Respondent. | ) | Filed:  December 3, 2024 |

Sharlean Gordon ("Plaintiff") appeals the judgment entered upon a jury verdict in favor of Monsanto Company ("Monsanto") on Plaintiff's claims for strict liability product defect, strict liability failure to warn, and negligence.  We affirm.

## I.      BACKGROUND

In July 2017, Plaintiff sued Monsanto alleging her prolonged exposure to Roundup and its ingredient glyphosate caused her to develop non-Hodgkin's lymphoma ("NHL").[1]  After years of pre-trial litigation and discovery, including the appointment of a special master by the trial court due to the complexity of the litigation, Plaintiff's case proceeded to a jury trial beginning in April 2023.  Over the course of a twenty-three-day trial, both Plaintiff and Monsanto put forth extensive evidence, primarily consisting of expert testimony from numerous

---

[1] Plaintiff sued Monsanto along with dozens of additional co-plaintiffs, but those individuals are not pertinent to this appeal.

witnesses and the admission of dozens of exhibits. Plaintiff presented expert testimony focused largely on the purported causal connection between glyphosate and NHL, including details of Plaintiff's medical history and the nature and duration of her exposure to glyphosate. Monsanto's evidence at trial consisted primarily of testimony from a multitude of expert witnesses in various areas of study, all claiming glyphosate is not carcinogenic. At the close of trial, the jury returned verdicts in favor of Monsanto on all three counts alleged by Plaintiff, and the trial court entered its judgment in accordance with the verdicts.

Plaintiff subsequently filed a motion for a new trial which alleged the trial court erred by, *inter alia*, failing to admit into evidence a portion of a scientific publication offered by Plaintiff at trial, restricting the direct examination testimony of one of Plaintiff's expert witnesses, and admitting into evidence multiple foreign regulatory documents offered by Monsanto at trial. The trial court denied Plaintiff's motion for a new trial. This appeal followed.[2]

## II. DISCUSSION

Plaintiff raises six points on appeal. Plaintiff's first point on appeal argues the trial court erred in excluding the glyphosate toxicology section of a scientific publication from evidence as hearsay. The second point claims the trial court erred in restricting the questioning of one of Plaintiff's expert witnesses on direct examination. In the remaining four points on appeal, which we address together below, Plaintiff contends the trial court erred in admitting documents from various foreign regulatory bodies into evidence.

## A. Standard of Review

A trial court's decision to admit or exclude evidence is reviewed only for an abuse of discretion, as is a trial court's determination as to whether sufficient foundation was laid for the

---

[2] To avoid unnecessary repetition, additional facts relevant to Plaintiff's points on appeal will be set forth in Sections II.B., II.C., and II.D. of this opinion.

admission of evidence. *Williams v. Mercy Clinic Springfield Communities*, 568 S.W.3d 396, 416-17 (Mo. banc 2019); *Asset Acceptance v. Lodge*, 325 S.W.3d 525, 528 (Mo. App. E.D. 2010). This Court does not decide whether evidence should have been admitted or excluded, but whether the trial court abused its discretion by admitting or excluding the evidence. *Piers v. Department of Corrections*, 688 S.W.3d 65, 73 (Mo. App. W.D. 2024). An abuse of discretion occurs when the trial court's ruling "is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Williams*, 568 S.W.3d at 416-17 (citation omitted). Furthermore, proving reversible error requires a party to demonstrate both an abuse of discretion and prejudice, and this Court will reverse only when the error was so prejudicial as to deprive the party of a fair trial. *Piers*, 688 S.W.3d at 73; *Hurley v. Burton*, 626 S.W.3d 810, 816 (Mo. App. E.D. 2021).

**B.      Plaintiff's First Point on Appeal**

Plaintiff's first point on appeal argues the trial court committed reversible error in excluding from evidence the glyphosate toxicology section of a scientific publication from the International Agency for Research on Cancer ("IARC Publication"). We disagree. Plaintiff has failed to show the trial court's admission of the IARC Publication was sufficiently prejudicial to her case. *See id*.

At trial, Plaintiff's witness, an expert in toxicology with a Ph.D. in organic chemistry ("Doctor"), testified as to the contents of the IARC Publication, including its ultimate conclusion that glyphosate is "a probable human carcinogen . . . that [] cause[s] non-Hodgkin's lymphoma." When Plaintiff eventually sought to introduce the IARC Publication into evidence, Monsanto objected on the grounds that it was hearsay without an exception. The trial court sustained Monsanto's objection and excluded the IARC Publication from evidence as hearsay.

3

Plaintiff's first point on appeal fails because she has not shown the trial court's exclusion of the IARC Publication was so prejudicial as to deprive her of a fair trial. *See id.* "Any error in the exclusion of any evidence is [] harmless if the same facts are shown by other evidence." *Kelly v. St. Luke's Hosp. of Kansas City*, 826 S.W.2d 391, 396 (Mo. App. W.D. 1992) (citation omitted). Plaintiff contends "[t]he IARC finding that glyphosate is a probable human carcinogen was a vital component of [her] case." However, Doctor testified multiple times at trial as to the IARC Publication's finding that glyphosate is a "probable human carcinogen" that causes NHL, and Plaintiff incorporated these findings into her closing argument. Plaintiff therefore was not prejudiced by the trial court's exclusion of the IARC Publication because its substance was shown by other evidence, specifically Doctor's testimony at trial. *See id.* (similarly finding).

Based on the foregoing, Plaintiff has not shown the trial court's exclusion of the IARC Publication was sufficiently prejudicial to deprive her of a fair trial. *See Piers*, 688 S.W.3d at 73; *Hurley*, 626 S.W.3d at 816. Plaintiff's first point on appeal is denied.

## C.      Plaintiff's Second Point on Appeal

Plaintiff's second point on appeal claims the trial court committed reversible error in restricting the questioning of Doctor during direct examination. Specifically, Plaintiff takes issue with the trial court limiting the scope of Doctor's direct examination regarding the "feasibility and utility of long-term animal testing" to three questions. However, Plaintiff has failed to demonstrate that the trial court's restriction of Doctor's testimony was both an abuse of discretion and sufficiently prejudicial to her case. *See id.*

Prior to calling Doctor to the stand and outside of the presence of the jury, Plaintiff requested permission from the trial court to "ask [Doctor] if it's possible to do a long-term study using Roundup." Plaintiff admitted to the trial court that Doctor had not been disclosed as an expert on the feasibility of long-term testing. The court then heard argument from both parties

4

regarding whether Doctor should be permitted to testify about the feasibility of long-term testing, and initially ruled that Plaintiff could not ask any questions on the subject during Doctor's direct examination. However, additional argument was later heard from both parties, after which the court decided to refer the issue to the special master assigned to the case. Following a discussion with the special master, the court decided to allow Doctor to answer three questions regarding the feasibility of long-term animal testing: (1) "what is your view on how to run a long-term animal study on formulated Roundup"; (2) "tell us about how the surfactant affects the study"; and (3) "can you do this test without hurting the mice."

"When an expert provides different testimony from that disclosed in discovery, a [trial] court has broad discretion as to its course of action." *Williams*, 568 S.W.3d at 417. "Appellate courts will only convict the trial court of abuse of that broad discretion when the record is clear that the trial court's action was arbitrary and so unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Blake v. Irwin*, 913 S.W.2d 923, 931 (Mo. App. W.D. 1996). In this case, the record clearly shows the trial court carefully considered lengthy arguments from both parties on multiple occasions and elicited the input of the special master before ultimately allowing Doctor to answer a limited number of questions regarding the feasibility of long-term testing. Moreover, limiting the subject matter of expert witness testimony is an appropriate course of action that falls within the broad discretion of the trial court under the circumstances presented in this case. *See Sanders v. Hartville Mill. Co.*, 14 S.W.3d 188, 211 (Mo. App. S.D. 2000) (similarly finding). Accordingly, the trial court did not abuse its discretion in limiting Doctor's testimony.

Furthermore, we are not convinced the trial court's limitation on Doctor's testimony was so prejudicial as to deprive Plaintiff of a fair trial. *See Piers*, 688 S.W.3d at 73; *Hurley*, 626

5

S.W.3d at 816. Plaintiff argued at trial that Doctor's testimony was only being offered to show that long-term animal testing "could have been done" in order to counter Monsanto's claim that long-term animal testing was not possible. Doctor was subsequently permitted to testify at length as to his expert opinions on how to run a long-term animal study and whether a surfactant (like the one in Roundup) would affect the study design, and Plaintiff summarized Doctor's testimony and incorporated it into her closing argument. Despite successfully convincing the trial court to allow Doctor's testimony regarding the feasibility of long-term animal testing, Plaintiff now argues on appeal that the limits placed on her questioning of Doctor prevented her from "fully responding" to Monsanto's claim that testing was not possible. However, Plaintiff's inability to further question Doctor during direct examination was not so prejudicial as to deprive Plaintiff of a fair trial because, despite the restrictions, Doctor was ultimately permitted to give substantial testimony indicating long-term animal testing was feasible, allowing Plaintiff to counter Monsanto's claims otherwise. *See id*.

Based on the foregoing, Plaintiff has failed to demonstrate the trial court's restriction of Doctor's testimony was both an abuse of discretion and sufficiently prejudicial to her case. *See id*. Plaintiff's second point on appeal is denied.

**D.      Plaintiff's Third, Fourth, Fifth, and Sixth Points on Appeal**

Plaintiff's remaining four points on appeal all contend the trial court committed reversible error in admitting four separate documents from foreign regulatory bodies into evidence at trial. Plaintiff specifically argues Monsanto failed to lay the required foundation to permit admission of each of the documents under the relevant hearsay exception for public records. We disagree.

6

## 1. Relevant Factual and Procedural Background

At issue on appeal are four separate documents admitted into evidence by the trial court: (1) a regulatory position issued by the Australian Pesticides and Veterinary Medicines Authority ("APVMA Document"); (2) a document entitled "Re-Evaluation Decision Glyphosate" issued by the Pest Management Regulatory Agency of Health Canada ("PMRA Document"); (3) an opinion issued by the European Chemicals Agency in March 2017 ("March 2017 ECHA Document"); and (4) an opinion issued by the European Chemicals Agency in May 2022 ("May 2022 ECHA Document") (collectively the "Regulatory Documents"). Each of these Regulatory Documents contained substantively the same conclusion: "[glyphosate] is not carcinogenic[] and it is not genotoxic."

At trial, the court heard arguments on multiple occasions from both parties regarding the admissibility of the Regulatory Documents and requested additional briefing on the issue. Both parties argued their respective positions by providing the trial court with extensive briefing and attached exhibits. On appeal, the parties agree all four Regulatory Documents constitute hearsay and the trial court ultimately admitted them into evidence under Missouri's hearsay exception for public documents. At issue is whether the trial court abused its discretion in admitting the Regulatory Documents under this exception and whether Plaintiff was sufficiently prejudiced by their admission.

## 2. General Law and Analysis

Under the "public documents" exception to the hearsay rule, "[i]t has long been the law in Missouri that a record kept or prepared by a person whose public duty it is to record the facts stated in the document is admissible as evidence of such facts." *State v. Blakeburn*, 859 S.W.2d 170, 177 (Mo. App. W.D. 1993). The public duty requiring the keeping of such a record is

7

generally prescribed by statute. *Id.*; *State v. Weber*, 814 S.W.2d 298, 302 (Mo. App. E.D. 1991). Where no statutory requirement exists, "the records are competent evidence when a foundation for their admission is laid by the clerk's testimony that they are the records which they purport to be and were prepared by the clerk in the performance of the clerk's official duty." *Blakeburn*, 859 S.W.2d at 177.

In this case, the public duty requiring the keeping of each of the Regulatory Documents is prescribed by statute. In the supplemental briefing requested by the trial court, Monsanto provided the court with a copy of each of the respective statutes requiring creation of the APVMA Document, the PMRA Document, the March 2017 ECHA Document, and the May 2022 ECHA Document. The record on appeal indicates the trial court carefully and deliberately considered the arguments of both parties and the exhibits they put forth – including the relevant statutes establishing that each of the Regulatory Documents qualified under the public documents hearsay exception – before ultimately admitting the Regulatory Documents into evidence. *See id.*; *Weber*, 814 S.W.2d at 302. Accordingly, the trial court did not abuse its discretion in admitting the Regulatory Documents. *See Williams*, 568 S.W.3d at 416-17.

Additionally, Plaintiff has not shown that the trial court's admission of the Regulatory Documents was so prejudicial as to deprive her of a fair trial. *See Piers*, 688 S.W.3d at 73; *Hurley*, 626 S.W.3d at 816. "A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection." *Sherrer v. Boston Scientific Corporation*, 609 S.W.3d 697, 714 (Mo. banc 2020) (citation omitted). Evidence is cumulative when it relates to a matter fully and properly proved by other testimony. *Johnson v. City of St. Louis*, 613 S.W.3d 435, 448 (Mo. App. E.D. 2020).

During cross-examination of one of Plaintiff's expert witnesses, a professor of toxicology ("Professor"), Monsanto confronted Professor with the APVMA Document's conclusion "that the scientific weight of evidence indicates that exposure to glyphosate does not pose a carcinogenic or genotoxic risk to humans." Professor agreed with counsel's statements regarding the APVMA Document's position. Professor was also asked to verify the "overall finding" from the PMRA Document that "[g]lyphosate is not genotoxic and is unlikely to pose a human cancer risk," and he did so. Additionally, Monsanto questioned Professor regarding the findings from the March 2017 ECHA Document, recounting Professor's earlier deposition testimony that this document did not find "glyphosate genotoxicity." During the same line of questioning, Monsanto also asked whether Professor was aware that the May 2022 ECHA Document found glyphosate not to be genotoxic, to which Professor responded, "[n]o, not really." Professor ultimately conceded during cross-examination that there was no "worldwide regulatory authority [that agreed] glyphosate is genotoxic."

Finally, one of Monsanto's expert witnesses, a regulatory toxicologist ("Toxicologist"), also testified at trial as to the conclusions of the Regulatory Documents. Toxicologist was asked during direct examination whether there was "a consensus conclusion of worldwide regulators . . . [o]n the carcinogenicity of glyphosate." Toxicologist answered "yes," and when asked what the consensus was, she responded, "[glyphosate] is not carcinogenic[] and it is not genotoxic."

Based on the foregoing, the findings contained within the Regulatory Documents were properly admitted into evidence without objection.[3] Accordingly, the Regulatory Documents

---

[3] Plaintiff objected during Monsanto's questioning of Professor regarding the APVMA Document on the grounds of "foundation pursuant to the foreign regulation issue," and the trial court overruled the objection. However, the record indicates this objection came after the APVMA Document had already been published to the jury and well after the conclusions of the other three Regulatory Documents had already been discussed during Professor's cross-examination.

9

themselves were cumulative evidence and Plaintiff has failed to demonstrate sufficient prejudice resulting from their admission. *See id*.; *Sherrer*, 609 S.W.3d at 714; *see also Shuttlewagon, Inc. v. Higgins*, 628 S.W.3d 185, 206-07 (Mo. App. W.D. 2021) (similarly holding); *Hurley*, 626 S.W.3d at 816.

### 3. Conclusion as to Plaintiff's Third, Fourth, Fifth, and Sixth Points on Appeal

Plaintiff has not shown the trial court's admission of the Regulatory Documents was both an abuse of discretion and sufficiently prejudicial to deprive her of a fair trial. *See Piers*, 688 S.W.3d at 73; *Hurley*, 626 S.W.3d at 816. Plaintiff's third, fourth, fifth, and sixth points on appeal are denied.

## III. CONCLUSION

The trial court's judgment entered upon the jury's verdict in favor of Monsanto is affirmed.

_____
ROBERT M. CLAYTON III, Judge

John P. Torbitzky, P.J., and
Michael S. Wright, J., concur.

10